In the margin at right: TEN BROECK v. LIVINGSTON.

————◦※◦————

TEN BROECK *against* W. T. LIVINGSTON.        '      *January* 23d.

Where a deed, in fee, contained a reservation of the right of "cutting and
    hewing timber, and grazing in the woods not appropriated or fenced in ;" it
    was held, that the right reserved ceased as soon as the premises were fenced
    in by the grantee, especially, where it appeared that the premises had
    been enclosed for above 30 years, and the right, during that period, had
    not been claimed or exercised.          '          '
Such rights may be lost by long negligence and disuse ; and presumptions
    of their release, or discharge, are favoured for the sake of quieting pos-
    sessions.
Where A. contracted to convey to B., " by a good and valid conveyance in
    law," a farm, which was originally parcel of a large tract of land granted by
    the proprietor of a *manor*, to the ancestor of A., in fee, "yielding and pay-
    ing to the grantor, his heirs and assigns, the yearly rent of ten shillings ;"
    the proportion of which *quit rent* on the farm, was 54 cents a year ; the
    existence of the quit rent being known to B. at the time of the contract, it
    was held that the existing of such an encumbrance, if it was any, was no
    objection to a decree of specific performance of the contract.
Whether such a *quit rent*, not having been demanded or paid for above 60
    years, will not be presumed to be become extinguished by lapse of time ?
    *Quære.*                                      (

THIS was a bill for a specific performance of an agree-
ment, under seal, made between the parties, on the 22d of
*December*, 1812, by which they agreed to exchange the
farms specified in the agreement, and to execute to each other
" good and valid conveyances in the law of the same," with
covenants of seisin and warranty ; and they agreed further
to refer it to *J. R. V. R.*, and *J. C. H.*, to arbitrate and

1815.

TEN BROECK
v.
LIVINGSTON.

assess the relative value of the farms, and what sum, if any, the defendant should pay to the plaintiff, to render the exchange equal ; and that mutual possession of the respective farms should be delivered on the 1st of *April*, 1813. The arbitrators made an *award*, on the 8th of *January*, 1813, that the defendant should, within four years from the 1st of *April*, 1813, pay to the plaintiff 10,750 dollars, with interest annually, from that time, and give good security for the payment. The bill further stated, that the plaintiff caused his farm to be surveyed ; that the defendant, wishing to get rid of the bargain, offered the plaintiff one hundred dollars to relinquish it, which he refused. That before the 1st of *April*, 1813, the defendant brought on the plaintiff's farm, rails and boards ; and the plaintiff also expended money on the defendant's farm, in confidence that the agreement would be fulfilled. Both parties requested an attorney to prepare the deeds ; and the plaintiff executed his deed, and tendered it to the defendant on the 13th of *March*, 1813 ; but the defendant refused to perform the agreement, or abide by the award of the arbitrators ; and the plaintiff again, on the 1st of *April*, 1813, tendered his deed to the defendant, who refused to accept it.

The answer of the defendant admitted the agreement and award, as stated in the bill ; but alleged, that after the publication of the award, he discovered that *Robert Livingston*, who owned the plaintiff's farm on the 20th of *October*, 1694, conveyed to *Dirck Wessell*, (a) (ancestor of the plaintiff,) for the consideration of 15*l.*, a tract of land, including the plaintiff's farm, in fee, the grantee "*yielding* and paying to the grantor, his heirs and assigns, the yearly rent of 10 *shillings*," and with a *reservation* to the grantor, his heirs and assigns, for ever, of the *right of* " *cutting and hewing timber*, and grazing in the premises, that is to say, in the *woods*

(a) This is one instance, among many, of the singular changes which have taken place in the names of the *Dutch* families in this state.

*not appropriated or fenced in.*" And the defendant there-    1815.
fore charged, that the plaintiff's farm was subject to the above $\overline{\phantom{TEN}}$
rents and reservations ; and that those encumbrances were    TEN BROECK
                                                              v.
unknown to the arbitrators when they made their award ;    LIVINGSTON.
and that all the declarations and acts of the defendant, to-
wards ratifying the contract and award, were made and done
*before* he discovered the above encumbrances on the plain-
tiff's farm.

The master to whom it had been referred to report on the
titles of the parties, &c., reported the evidence taken before
him. It was proved that the farm of the plaintiff had been
enclosed or fenced in for above 31 years ; that a small spot
of 3 or 4 acres, called the *Ogden* spot, formerly not fenced
in, had been, for several years, improved, and was now fenced
in, and in the occupation of the plaintiff. That it was no-
torious that all the lands in the manor of *Livingston* are
held subject to quit rents ; and that the defendant had fre-
quently said, before the agreement, that he knew of the ex-
istence of the quit rent, which was a trifling sum. That
the plaintiff had never been called on for any quit rent. That
there were 250 acres of woodland on the farm, not cleared,
and the right to cut wood had never been exercised.

The report also stated, that the quit rent on the farm
amounted only to 54 cents a year ; and that, from the *manor
books*, it did not appear that any quit rents had ever been
exacted or paid.

*Henry*, for the plaintiff, contended, that the reservation,
as to cutting timber, &c., in the title deed of the plaintiff,
applied only to lands not fenced in ; and as the whole farm
had been enclosed for more than 30 years, there was an end
to the reservation. Besides, it was proved that the
right had never been exercised during a period of more than
100 years, which had elapsed from the time of making the
grant : and it must, therefore, be presumed to have been

1815.

Ten Broeck
v.
Livingston.

extinguished by release. (1 *Fonbl. Equ.* 319. b. 1. ch. 4. s. 27. n. 2. 1 *Vern.* 32. 2 *Atk.* 67. 632. 3 *P. Wms.* 266. 2 *Ves.* jun. 583.)

The quit rent reserved was apportionable, and the report of the master makes it no more than 54 cents a year. It rests in covenant merely : and the maxim, *de minimis non curat lex*, is fairly applicable. Besides, as it has never been demanded, the presumption is that it has been extinguished. (*Francis's Maxims*, 40. pl. 9. 2 *Vent.* 351, 352.)

*E. Williams*, contra, contended, that as the plaintiff could not convey a clear and *perfect title* to all his farm, the defendant was not bound to accept the deed, or to perform the contract on his part. The tender of a good *deed* is not enough ; there must be a good *title* to the whole of the premises. (2 *Johns. Rep.* 612.) The plaintiff could not, in this case, recover damages at law for the non-performance of the contract by the defendant. (*Jones* v. *Gardner*, 10 *Johns. Rep.* 266.) A court of equity will not, therefore, decree a specific performance. (1 *Fonbl.* b. 1. ch. 3. s. 1.)

But is there ground for the presumption, that the rents and reversion have been released ? There can be no adverse possession, in this case, to afford the legal presumption. The plaintiff shows the source of his title, and spreads out before the court his whole title. The law will not presume a grant or release in such a case. (*Hull* v. *Horner*, *Cowp.* 102.) *Mere length of time* is not sufficient ground to create a *bar* to quit rents, unaccompanied by other circumstances. A presumption from length of time to support a right, is different from a presumption to defeat a right, as in this case. In *Eldridge* v. *Knott*, (*Cowp.* 214.,) where the *quit rent* was only 2s. and 6d., the court would not presume a release or extinguishment, from the lapse of time, short of 50 years, the period fixed by the statute of limitations. It appeared from the manor books, that rent was paid to 1768, and charged down to 1790.

*Henry*, in reply, said, that the *quit rents* reserved in these and similar cases, were intended merely as recognitions of *memorial seigniory*, not as any beneficial rent. So all the *colonial* grants before the *American* revolution, from the crown or government, contained reservations of *quit rents*, as badges of tenure, or acknowledgments of sovereignty; and not with a view on the part of the government to derive any pecuniary benefit from the reservation; and there was no instance where such quit rents had been demanded by the crown from the colonial patentees.

1815.

TEN BROECK
v.
LIVINGSTON.

The question, in this court, is, can the party make a good and operative title? The reservation to cut wood and graze applied only to the woods lying *in common*, and ceased as soon as they were appropriated and enclosed. A prescription will run between tenants in common; and equally so between landlord and tenant. There is no evidence of any payment of rent in 40 years, but merely of a charge in the manor books.

No suit at law would lie to recover this rent. At any rate, it is a case for compensation, and affords no ground to refuse a decree for a specific performance.

THE CHANCELLOR. The master reports, that the parties, respectively, can make a good title to each other for the premises mentioned in the submission and award. But the defendant objects to the goodness of the plaintiff's title, on two grounds: 1. That the lands are charged with an encumbrance reserved in the deed of the 26th of *October*, 1694, from *Robert Livingston* to *Dirck Wessells*, the ancestor of the plaintiff. By this deed, which was for a tract of land of which the premises were only a part, the grantor reserved to himself, and his heirs and assigns, the right of cutting timber, and of grazing, in the woods "*not appropriated or fenced in.*" 2. That the deed contained, also, a reservation to the grantor, and his heirs and assigns, of the yearly rent of 10s.

VOL. I.                    2 Z

1815.

TEN BROECK
v.
LIVINGSTON.

1. With respect to the first objection, it appears to me to be the true construction of the grant, that the reservation ceased and became extinguished, as to the lands belonging to the plaintiff, when those lands were enclosed by fence, and reduced from the state of common lands to that of specific and exclusive appropriation. It was proved before the master, that excepting the small *Ogden* spot, which was more recently enclosed, all the plaintiff's farm had been under fence for above 30 years, and that the exercise of the right reserved by the deed had not been claimed or asserted within that period of time. It cannot be supposed to have been the intention of the reservation, that the lands should always continue subject to that *servitude*, however appropriated by the owner; for this would be giving to the grantor a right repugnant to the nature of the grant itself, and to the absolute and beneficial ownership which an estate in fee was intended to convey. By construing the words according to their obvious and natural sense, we give to the reservation a reasonable operation, and one consistent with the interest of the grantee. It was no more than a right of common, and that right is utterly inconsistent with the exercise of the right of enclosure. The plaintiff either had no right to appropriate and fence in the woods, or the right of cutting and grazing ceased as soon as the woods were actually and *bona fide* enclosed. The long disuse of this right, if even it was used, is evidence of the sense of the parties that the right ceased when the woods were fenced in; and a right of this kind, as well as other rights, may be lost by long negligence and disuse. This was so said in *Gateward's* case, (3 *Leon.* 202.) It will let in the presumption of a release, or other discharge, and such presumptions are to be favourably received in opposition to dormant claims, because they conduce to the quiet of titles, and the security of estates; and this argument would be entitled to weight, if the construction which I have given to the grant was insufficient or doubtful.

2. The other objection founded on the quit rent, cannot be admitted to be set up in this case.   The covenant that each party was to make a " good and valid conveyance in the law," will be satisfied if the party can make a good title, subject to that portion of the nominal quit rent of 10s., which might fall upon the premises of the plaintiff.   It appears that this reservation of rent was well known to the defendant when he made the contract ;  it was a matter, also, of public notoriety, that all the lands in the manor, were subject to such a quit rent.   It was never, then, within the contemplation of these parties, that this rent was to form an obstacle to title.   The quit rents due to government, under all colonial grants, might as well be set up as an objection to the performance of any covenant to convey. This rent was declared to be in lieu of all other rents, and was evidently, as the counsel observed, nothing more than the recognition of the manorial seigniory, and which, at that early day, was deemed a matter of some importance.   On a due apportionment of that rent, if it was now to be collected, the burthen, or part, falling on the farm of the plaintiff, would be but fifty-four cents a year.   As I do not consider this rent as forming any obstacle to the mutual good title intended by the contract of the parties, it becomes unnecessary to agitate the question, whether the rent itself has not become extinguished by lapse of time, owing to the presumption arising from the want of evidence of its having been demanded. or paid, for the last 60, if not 100, years.

I shall, accordingly, decree a specific performance of the agreement of the parties, mutually to convey.   The only remaining point is,  whether the defendant is to be charged with interest on the 10,750 dollars, from the 1st of *April*, 1813.   If he is to be so charged, then there ought to be an account taken of the rents and profits of the respective farms for the last two years.   But as each party has continued in the possession of their respective original farms, and as the farm of the plaintiff is to be considered as exceeding in value

*1815.*

TEN BROECK
v.
LIVINGSTON.

the defendant's farm, to the amount of 10,750 dollars, I think it would be just and equitable to leave each party in the enjoyment of the rents and profits which he has hitherto received, and that interest on the sum should not commence until the titles and possessions are exchanged. The decree will then be, that the parties mutually convey and deliver possession by the 1st of *April* next, and that the defendant pay to the plaintiff, in two years from that day, the 10,750 dollars, with interest, annually, from the 1st of *April* next, and give security according to the award; and that, in the mean time, neither party commit waste on the premises of which they are now in possession; and that the defendant pay to the plaintiff his costs of this suit, to be taxed.

Decree accordingly.