Leonard v. Woodruff.

## F. J. LEONARD, Respondent, v. LUCIUS L. WOODRUFF et al., Appellants.

VENDOR AND PURCHASER—CONTRACT OF SALE—IMPLIED WARRANTY—
SPECIFIC PERFORMANCE—STATUTE OF FRAUDS—EVIDENCE.

1. Where a vendee, on entering into a written contract for the sale of real estate, knows that there is a squatter in possession of a portion of the property, and the written contract does not refer thereto, or to the character of the vendor's title, there is no implied contract to furnish a good and marketable title as against such squatter.

2. The vendor may enforce a specific performance of the written contract, though the squatter continues in adverse possession of a portion of the property.

3. Letters in which the parties agree to an exchange of real estate, but which do not describe the property, constitute a sufficient compliance with the statute of frauds, requiring contracts for the sale of lands to be in writing, when considered in connection with deeds to the property to be exchanged, though one of the deeds is not delivered.

4. Letters in which the parties agree to exchange real estate are sufficient compliance with the statute of frauds, though the letters do not describe the lands, when considered in connection with the answer in a suit for specific performance, which admits that the property contemplated in the letters is correctly described in the complaint.

5. Where a written contract for the sale of real estate does not mention the possession of a portion thereof by a squatter, and is silent as to the vendor's title, parol evidence is admissible to show that the vendee had notice of the squatter's possession at the time of the execution of the contract.

### Decided May 14, 1901.

Appeal from District Court, Salt Lake County.—*Hon. Ogden Hiles,* Judge.

Action for specific performance by Fred J. Leonard against Lucius L. Woodruff and others. From a decree in favor of plaintiff, defendants appeal.

AFFIRMED.

*Messrs. Pierce, Critchlow & Barrette* for appellants.

*S. P. Armstrong, Esq.,* for respondent.

BASKIN, J.—This is an action for specific performance. A decree was made and entered in the court below, requiring the defendants to specifically perform the agreement set out in the complaint, and among the requirements of the decree was the execution and delivery by the defendants to the plaintiff, or, on his request, to Glen R. Bothwell, in accordance with said decree, a good and sufficient deed of conveyance in fee simple, with covenants of warranty, of certain real estate situated in Salt Lake City. The appeal is from this decree.

The answer denies generally the allegations of the complaint. The agreement between the parties, decreed to be specifically performed, was for the exchange of tracts of real estate, separately described in the complaint, and owned respectively by the parties. It was alleged in the answer, and the appellants still claim, that the respondent's title is defective, in this: that one Stewart (a squatter) was at and before the date of the alleged agreement, and ever since has been, in the possession of a portion of the real estate, which respondent claims was by said agreement to be conveyed by him in said exchange, and that, therefore, the respondent's title is not a good and marketable one. The said Stewart was in possession of a small piece in one corner of the land to be conveyed by the said Leonard, which was of little value as compared

with the balance of said land, and did not interfere with the full enjoyment of the latter.

The first, second, and third objections urged by appellants' counsel in their brief are so connected that they can be considered together, and are as follows: (1) "Where there is an agreement to convey, there is an implied contract to furnish a good and marketable title." (2) "The title of plaintiff's Mercur property was not good and marketable, because John Stewart had possession and claimed part of the ground, and therefore a specific performance should not be enforced." (3) "There is no legal evidence to show that defendants agreed to take the Mercur property subject to Stewart's possession." The trial court found "that the said defendants had full knowledge of the possession of said Stewart, mentioned in defendant's answer, at the time they entered into said agreement, and of all his claims to said Mercur property, and that they agreed to take and receive the same, subject to the said squatter's (Stewart's) possession." We think both this and the following finding are supported by the evidence, to-wit: "That said defendants did not, at any of the times when they refused to perform their agreement, state such refusal to be made on the ground of the said Stewart's possession, but stated their objection and refusal to perform to be on other and different grounds." In view of these findings of fact, the foregoing objections are untenable.

The fourth objection is that it was not shown, as required by the statute of frauds, that the alleged agreement was reduced to writing. The section of the statute of frauds which applies in this case is as follows: "Every contract for the leasing for a longer period than one year, or for the sale of any land or any interest in lands, shall be void unless the contract or some note or memorandum thereof is in writing and subscribed by the party by whom the lease or sale is to be made or by his lawful agent thereunto authorized in writing." Prop-

ositions having been previously made for the exchange afore-
said, a correspondence followed in relation thereto, the material
portions of which are as follows:

. Exhibit A: "Mercur, Utah, May 5, 1900. Mr. Fred
J. Leonard, Salt Lake City—Dear Sir: After looking over
the property and prospects of the camp, in connection with my
brother, we decided not to make the trade on the basis pro-
posed. . . . The property we own in Salt Lake we con-
sider a bargain at $2,500 for our equity. . . . I think
there is at least $500 cash difference in our favor. . . .
Pardon our delay in coming to a conclusion on this proposi-
tion. Respectfully yours, Woodruff Bros. L. L. W.

"As to a trade on the basis of $500 in our favor 'boot,'
I did not propose that to my brother. Would have to submit
it.

"P. S. We found the building quite defective. Could
put up a better one for $1,000."

Exhibit B: "Salt Lake City, Utah, May 7. L. L.
Woodruff, Mercur, Utah—Dear Sir: I received your letter,
and in reply would say that I will make you a counter prop-
osition, and it is as follows: I owe $2,100 on the buildings,
and on the last of this month $150 in interest; you to take up
insurance policy, and pay the balance of the time covered by it.
This would mean that I would pay you $250 in cash. I to
take up the mtgs., and each to pay taxes, so that each would
pay one-half taxes on both. Yours, truly, F. J. Leonard."

Exhibit C: "Mercur, Utah, May 9, 1900. Mr. F. J.
Leonard, Salt Lake City—Dear Sir: Your favor of the sev-
enth at hand, with counter proposition. When the trade was
first broached, I was favorable to making an even trade, al-
though my brother was not. Since then the prospects of the
camp have become much more discouraging. I have talked
with quite a number of leading business and professional men

here on the outlook, and they predict a short life for the camp at anywhere near its present prosperity, which is nothing to boast of in a business light.   , I wrote my brother that I had offered to trade for $500 'boot' in our favor. By the inclosed letter you will see how much he favors it, although he leaves me to decide. . . . I look to see those stores renting for $15.00 each inside of three years, in order to keep them occupied, and the property in the meantime to shrink to a valuation of $1,000 or less. As a speculation I would not consider the proposed trade even with $500 'boot.' But the matter of income is the only deciding factor, and I am willing to make the trade with $500 'boot.' We pay taxes here, and unexpired insurance. You pay taxes there. This offer I make with the belief that the property here will be about as worthless in about five years, whereas the 12th East property will have advanced at least fifty per cent. Respectfully yours, Woodruff Bros. L. L. W."

The brother's answer contained the following:

"Blackfoot, Idaho, May 7, 1900. Dear Brother Lush: I received your long letter a few minutes before leaving Walker for train Saturday night. If you want to trade with Leonard, and he will give $500 to 'boot,' go ahead. . . ."

Exhibit D: "Salt Lake City, Utah, May 12, 1900. Mr. L. L. Woodruff, Mercur, Utah—Dear Sir: I am in receipt of your favor of ninth and in reply would say that I can not do better than my last proposition, whereby I am to pay you $250, and you to pay the unexpired portion of the insurance, and interest up to date on your property. . . . Yours truly, F. J. Leonard."

Exhibit E: "Mercur, Utah, May 13, 1900. Mr. F. J. Leonard, Salt Lake City—Dear Sir: Your favor of twelfth received. I can give you a decisive answer by Wednesday. As for myself I am willing to make the trade as proposed, but wish to have my brother's (in Blackfoot, Ida.) indorsement

of the trade.  As you know, he has been quite reluctant heretofore.  Respectfully yours, Woodruff Bros.  L. L. W."

Exhibit F.  "Mercur, Utah, 5-15, 1900.  Mr. F. J. Leonard, Salt Lake City—Dear Sir:  Just heard from my brother, and he consents to the trade on the basis proposed by you.  So you can go ahead, and make out the necessary papers.  Whittemore & Co., 215 Main, may have the abstract to the 12th East property, or E. B. Wicks.  If not, and it is in the East, then order a new abstract.  Respectfully yours, Woodruff Bros.  L. L. Woodruff."

Exhibit G:  "Salt Lake City, Utah, May 16, 1900.  L. L. Woodruff, Mercur, Utah—Dear Sir:  I received your acceptance of the trade.  I will send you my abstract, as I have one for the two city lots, but I have not got one for the piece in the rear that I bot. from the Mercur people.  They would not furnish me one, as they showed me the patent to them, and made a deed to me.  I can not close up deal until party who holds mtge. on my property returns, which will be in about ten days.  I will call upon Whittemore to-day for your abstract.  McInnes has paid up to June 1, and Schwartz's rent commences on the fifteenth of the month, and you will be entitled to the rent commencing on May 15.  I will be down in a day or two.  Yours, truly, F. J. Leonard."

Exhibit H:  "Salt Lake City, Utah, May 31, 1900.  L. L. Woodruff, Mercur, Utah—Dear Sir:  Please find inclosed order to the tenants to pay you the rent on the bldgs., commencing on June 1.  I ought to have part of Schwartz's, as he does not pay in advance.  His rent is due June 15.  Your abstract will be here Saturday or Sunday.  I will send you my abstract down to date except on the lot 10, blk. 1, Mercur Sub. of Southside mining claim.  Yours, truly, F. J. Leonard."

Exhibit H 1:  "Salt Lake, Utah, May 31, 1900.  O. M. Schwartz and Duncan McInness—Gentlemen:  You will

please pay your rent from this date to Woodruff Bros., commencing on June 1, 1900, as I have sold the property to them. F. J. Leonard."

Exhibit I: "Salt Lake City, Utah, May 31, 1900. Woodruff Bros., Mercur, Utah—Gentlemen: Please find inclosed my abstract of Mercur lots. Respectfully, F. J. Leonard."

Exhibit J: "Mercur, Utah, June 5, 1900. Mr. F. J. Leonard, Salt Lake City—Dear Sir: Your favor, with abstract inclosed, and order on tenants, received. I will have abstract examined at once. Think it will be all right. Can't you do something with that squatter? We would be willing to pay $100 for his building and have possession, but think you could buy more readily for even that money than we could, especially if you intimated that you would have to take the matter into court. The abstract ought to be here from New York by this time. Respectfully yours, Woodruff Bros. L. L. W."

Exhibit L: "Mercur, Utah, June 20, 1900. Mr. F. J. Leonard, Salt Lake City—Dear Sir: After my return yesterday from Salt Lake, I learned that the restaurant was liable to suspend business soon, and that McGinnes, on the other side, wished to sell out. That shows a prospect of one or both stores being idle soon. (Two other stores just vacated here.) Again, I have not been pleased with the fact there seemed to have been no effort made to oust or buy out Stewart, the squatter, since this deal was on foot. His house cuts out a much bigger notch from the property than I at first supposed. I wrote you recently on that subject, but failed to receive a reply. Again, in my conversation with Mr. Bothwell yesterday on the train certain facts developed that were unfavorable to the trade on our side. Now, as my brother very reluctantly consented to the trade, coupled with the above points or reasons, I consider it will be an injudicious trade for us,

and we will therefore decline to complete the proposed trade; no consideration having passed between us in any shape or form to bind the trade. We have not mentioned the matter of rents to the tenants for the reason that we did not consider ourselves owners until the proposed deal was completed. We regret any trouble the proposed exchange may have occasioned you. As to the expense, any expense you may have been to connection with the proposed trade, outside of perfecting your title, we will willingly pay on receipt of your bill of items. . . Respectfully yours, Woodruff Bros.

"N. B. It will be the first deal we have ever declined to complete. Please hand our abstract to Mr. E. B. Wicks, or mail to us. We paid abstract company's bill. Also paid Bruneau $5 to pass upon your title. You are welcome to the latter."

Exhibit N: "Mercur, Utah, June 28, 1900. Mr. F. J. Leonard, Salt Lake City—Dear Sir: When I returned your deed recently (taken from your office by mistake), I meant to have returned the inclosed abstract as well. The deed, with a $2,100 mortgage still on the property, was, of course, worthless to us. Respectfully yours, Woodruff Bros."

The appellants, Lucius Woodruff, Ada Woodruff, his wife, and Wendell P. Woodruff, executed a deed, which was duly acknowledged before A. H. Dunlavy, a notary public, on the twelfth day of May, 1900, fully describing and conveying to Glen R. Bothwell the property, which the respondent claims was, by the alleged agreement for said exchange, to be conveyed to him, and was afterwards exhibited to the respondent at a meeting of the parties. The lower court found that said deed was so executed by the defendants "and exhibited to plaintiff, and the same was satisfactory to him, and no objection was made by him to said deed, or to the form thereof. The said deed was so made to said Bothwell at the request of plaintiff, and for convenience merely; that the delivery of

said deed, so made by defendants, was withheld until such times as plaintiff could secure the release of his said mortgage on the said Mercur property; that on June 20 defendants refused to perform their said agreement, and repudiated the same." No exception is taken to these findings. On the fifth day of June, 1900, the respondent and his wife executed and acknowledged before a notary public a deed conveying to the appellants Lucius L. Woodruff and Wendell P. Woodruff the property which the complaint alleges was to be conveyed by the respondent under the alleged agreement. This deed, after its execution, went into the hands of Lucius Woodruff, and remained in his possession until after the agreement was repudiated. (See Exhibits L. and N.) No objection appears to have been made to the form of the deed by the appellants, or either of them. It is alleged in the answer as follows: "These defendants allege that they did have some negotiations with said plaintiff looking towards the transfer of the property situate in Salt Lake City, Utah, and described in paragraph 4 of said complaint, but allege that no contract was entered into or completed between said plaintiff and said defendants for the transfers each to the other of said respective properties." It clearly appears from the record that the negotiations referred to are those hereinbefore mentioned. Do the letters which passed between the parties in connection with the deed to Bothwell constitute such a memorandum of an agreement between the parties for an exchange of said real properties as meets the requirements of the statute of frauds? We are of the opinion that they do. The only requirement about which there can be any question is that relating to the description of the properties to be exchanged. Each was properly described in the respective deeds executed by each of the parties with a view to the consummation of the exchange. The fact that these deeds were never finally delivered, and did not take effect as conveyances, and that one of them was

not executed until after the terms of the exchange offered by the respondent had been accepted (the dates of which offer, acceptance, and the acquiescence of the respondent are shown by exhibits D, F, and G), did not destroy their effect as written memorandums signed by the parties to be charged, or as evidence of the agreement to make the exchange. Jenkins v. Harrison, 66 Ala. 346, 355 and cases cited; Thayer v. Luce, 22 Ohio St. 62, 74-76; Bowles v. Woodson, 6 Grat. 78; Parrill v. McKinley, 9 Grat. 1, 58 Am. Dec. 212. Again, the answer, which admits that the negotiations therein mentioned related to the properties which are accurately described in the complaint, and which, as we have stated, resulted in the agreement to make the exchange, is a sufficient designation of the properties to meet that requirement of the statute of frauds. Jenkins v. Harrison, 66 Ala. 355; Barry v. Coombe, 1 Pet. 640, 7 L. Ed. 295.

The only other objection presented by appellants' brief is the refusal of the court to strike out the following answer of the plaintiff to this question asked by the presiding judge, on the ground that the answer tended to vary the terms of the alleged written contract, in violation of the rule that oral testimony is not admissible to vary a written contract, to wit: "Q. Let me understand. At what time in the negotiations, if ever, did you tell Woodruff of Stewart's possession thereto? A. Before we entered into any trade. Told him Mr. Stewart had a squatter's possession on the one part of the lot, or the back part of it." Generally, the vendor, in the absence of an agreement for a specific interest (as is the case in respect to Leonard's title), is required, as a condition precedent to the bringing or maintaining an action for specific performance, to tender to the vendee a conveyance of a good marketable title to the whole property contracted for; but, where the agreement is silent as to the character of the title, and there existed at the time the agreement was entered into, an incumbrance,

of which the vendee had notice, he will be forced to accept without compensation the interest which the vendor has, and the fact of his notice may be proven by parol. Savings Inst. v. Jones' Ex'rs, 37 N. J. Eq. 449-451; Pom. Spec. Perf. Cont. (2 Ed.), secs. 157, 346; Ten Broeck v. Livingston, 1 Johns. Ch., 357, 363; Winne v. Reynolds, 6 Paige 407-413; Thompson v. Hawley, 14 Or. 200, 206, 12 Pac. 276. The testimony in question was competent. It is ordered that the judgment of the court below be affirmed, and that the appellants pay the costs.

*Bartch, J.*, and *Hart, District Judge*, concur.