HUMMER, Appellant, vs. McGee, Respondent.

*December 7, 1909—January 11, 1910.*

*Contracts: Proposal and acceptance: Mining lease: Agreement as to assignment: Construction: Forfeiture: Statute of frauds: Several writings.*

1. Plaintiff, lessee under a mining lease, made three different proposals to defendant to assign the lease and sell the equipment. Two of these gave defendant an option to purchase the equipment at a future date and provided for payment of a monthly rental until that date. It was afterwards agreed between the parties that defendant would accept one of three proposals and that until such acceptance he would pay the expense of development work by plaintiff, required by the lease. Before the time for acceptance had expired, defendant having failed to keep up the payments for development work, that work was discontinued and the lease forfeited. *Held*, that defendant was not

liable for the monthly rental for the equipment, since under the agreement he might have accepted the proposal which did not require payment of rent.

2. No purchase having been consummated, and the lease having been forfeited before the time for acceptance expired, defendant was not liable for any purchase money.

3. Defendant was liable, however, under the agreement for the expense incurred by plaintiff in development work.

4. Although, before making the proposals to defendant, plaintiff had failed during one month to perform the full amount of development work required by the lease, such failure did not *ipso facto* forfeit the lease or terminate his title, since it might be waived by the lessor; nor did such failure constitute an incumbrance on the leasehold.

5. A provision in the lease requiring the approval of the lessor to any assignment did not disable plaintiff from contracting to assign it, and defendant, having had the lease in his possession, presumably contracted with reference to such requirement.

6. Under the statute of frauds of Colorado relating to contracts for the leasing for a longer period than one year or for the sale of any lands (substantially the same as sec. 2304, Stats. 1898), several distinct and separate writings may be construed together as containing all the terms of the contract, though only one of them be signed by the party to be charged. Thus, in this case, proposals by plaintiff to assign a lease, the lease itself, and an undertaking by defendant to accept one of such proposals, taken together, are *held* to satisfy all requirements of the statute.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

*H. L. Kellogg,* for the appellant, cited *Washburn v. Fletcher,* 42 Wis. 152; *Docter v. Hellberg,* 65 Wis. 415; *Singleton v. Hill,* 91 Wis. 51; *Harney v. Burhans,* 91 Wis. 348; *Van Doren v. Roepke,* 107 Wis. 535; *Beckwith v. Talbot,* 2 Colo. 639, affirmed in 95 U. S. 289; *M'Nitt v. Clark,* 7 Johns. 464; *Norris v. Harris,* 15 Cal. 226; *Patchin v. Swift,* 21 Vt. 292; *Niland v. Murphy,* 73 Wis. 326.

*L. M. Jeger,* for the respondent.

TIMLIN, J. The plaintiff was lessee of the Gold Bond Consolidated Mines Company under a lease in writing for a term of three years from January 1, 1904. He had power to

sublet or assign subject to the approval of the board of direct-
ors of the lessor. The lease contained several covenants,
among them to work and mine the demised premises steadily
and continuously from the date of the lease, performing and
completing in each calendar month during its continuance not
less than 100 shifts of work. A shift is one day's work for
one man. Upon the violation of any covenant of the lease it
was provided that the term should, at the option of the lessor,
expire. The plaintiff had performed less than 100 shifts of
work in the month of May, 1904, but no forfeiture had been
declared or claimed, and he was in possession of and working
the leasehold. On May 31, 1904, the plaintiff, the defendant,
H. R. King, and Maurice S. Lindholm met in Denver, Colo-
rado, and after some negotiations the plaintiff delivered to the
defendant or those associated with defendant the said lease,
together with three writings, as follows:

"*Proposition No. 1.* I will assign the lease and retain a
$\frac{1}{8}$ interest on the net earnings of the mine, and lease the ma-
chinery and mining outfit for $50 per month until January
1, 1905, giving you an option to purchase said outfit on that
date for $1,000 less the amount paid as rental, still retaining
the $\frac{1}{8}$ interest on net earnings of the mine.

"In presence of H. R. King.        George A. Hummer.

"*Proposition No. 2.* I will assign lease to you retaining
$\frac{1}{8}$ interest in net earnings of mine and give you option to pur-
chase same on January 1, 1905, for the sum of $3,000 payable
in cash at that time agreeing to lease all machinery and min-
ing outfit until that date (Jan. 1, 1905) for a monthly rental
of $50 per month with the privilege of purchasing the same on
January 1, 1905, for $1,000 less the amount paid in the afore-
said rentals.        George A. Hummer.

"In presence of H. R. King.

"*Proposition No. 3.* I will assign lease and sell all mining
outfit machinery, etc., for the sum of one thousand dollars
($1,000) and a further sum of two thousand dollars ($2,000)
the latter to be paid in instalments of $\frac{1}{8}$ of the profits of the
net earnings of the mine until such sum of $2,000 is fully
paid.        George A. Hummer.

"In presence of H. R. King."

The defendant in the progress of the same negotiation executed and delivered to the plaintiff the following:

"*Proposition.* We severally agree to accept one of the several propositions Nos. 1, 2 and 3 submitted in memo. of agreement to us by *Geo. A. Hummer* on May 31, 1904, concerning the purchase of the Gold Bond mining lease in blocks 6, 7 and 8 in Gold Bond subdivision and until such acceptance we agree to pay the cost and expense of operating 100 shifts per month and other expenses incidental to developing said lease, the said expense, however, not to exceed $500 per month for the actual work of development and straightening shaft, etc. All of which is conditioned upon the assignment or purchase of said lease free and clear of all incumbrance of whatsoever nature. C. A. A. McGee.

"MAURICE S. LINDHOLM.

"In presence of H. R. King."

The propositions of the plaintiff were dated May 31, 1904, that signed by the defendant June 2d; the plaintiff accepted the last-mentioned instrument and agreed to it, and continued in possession of and operating under the mining lease; the defendant and those associated with him made the first payment for work and developing the property for June under the contract above set forth, but failed to pay for July or August; the plaintiff stopped work August 20th, and the lease was forfeited September 17th,—all in 1904. On September 17th the defendant with Lindholm wrote to the plaintiff withdrawing and annulling their propositions of June 2, 1904.

Upon this showing the plaintiff seeks to recover the $50 per month rental, the amount to be paid for the lease and mining machinery and the amount of money that he disbursed for exploring and developing the mine during the month of July.

With reference to the $50 per month rent, it is very obvious the plaintiff has no right of recovery. The contract of defendant was to accept one of the three propositions, thus giving the defendant the option to select. He never selected, and his time for selection had not expired, and one of these propositions contained no requirement for paying rent. As

defendant might have selected this one, he was not in default with respect to rent. Neither could the plaintiff recover anything of the purchase money of the lease or the mining machinery or outfit. No purchase was consummated. There could be only a question of damages. Two of the propositions gave the defendant until January 1, 1905, to select which he would accept, and the third, fixing no time, gave him a reasonable time in which to do so. Before either of these periods had expired and before any selection was made by defendant, the lease was forfeited by the lessor by reason of failure to continue development work on the mine. So that the plaintiff had nothing to convey to defendant on and after September 17, 1904, which date was long prior to the end of the period within which defendant might select which of the three offers he would accept.

But with reference to the covenant on the part of defendant to pay the expenses of development during the period of his option for selection the case is different. The learned circuit court, relying on the statute of frauds of the state of Colorado (Mills's Ann. Stats. § 2021) and its construction by the supreme court of Colorado in *Eppich v. Clifford,* 6 Colo. 493, considered the contract in question was within that statute and therefore invalid. In this we think the learned circuit court was in error. With the three propositions signed by the lessee there was delivered to the defendant the lease proposed to be assigned and which contained a description of the property. There was also delivered to the plaintiff the undertaking on the part of the defendant to accept one of the three propositions. This was accepted by the plaintiff and performance entered upon by both parties so far as paying the expenses of developing the property during the option period is concerned. From the three propositions made by the plaintiff, the lease itself, and the undertaking on the part of the defendant, all the requirements of the Colorado statute and of the case of *Eppich v. Clifford, supra,* are satisfied. 29 Am. &

Eng. Ency. of Law (2d ed.) 850, 851. In *Ryan v. U. S.* 136 U. S. 68, 10 Sup. Ct. 913, it was held that a deed given to the proposed grantee or his agent for the purpose of examination only was sufficient to supply the defective description in the preliminary written contract signed by the party sought to be charged. See, also, *Jenkins v. Harrison,* 66 Ala. 345, and cases cited; *Leonard v. Woodruff;* 23 Utah, 494, 65 Pac. 199. And see *Campbell v. Thomas,* 42 Wis. 437, where there was no preliminary obligation in writing signed by the party sought to be charged. It is never necessary under this statute that the memorandum should consist of a single instrument. Several distinct and separate writings may be construed together as containing all the terms of the contract, though only one of them be signed by the party to be charged.

The failure of the plaintiff to perform the full amount of labor required by the terms of the lease during the month of May did not *ipso facto* forfeit the lease or terminate his title. That default might have been and probably was waived by the landlord, who accepted the benefit of this development work for June and the report of the same. However, this is a matter for proof. It is sufficient for the purpose of this appeal to say that it is not shown that the plaintiff had no title to convey on May 31, 1904, nor would plaintiff's failure to perform the full amount of development work required constitute an incumbrance on the leasehold.

With respect to the provision in the lease requiring the approval of the landlord to any assignment, this stipulation does not disable the tenant from contracting to assign subject to such approval, and an absolute agreement to assign includes an agreement to procure such approval. The defendant had the lease in his possession and presumably knew of this requirement and contracted with reference to it. Upon the evidence the right of the plaintiff to recover for moneys paid out by him in carrying on operations under this lease after June 2, 1904, and up to the time he stopped work, less the amount

thereof received from defendant and those associated with him and limited in amount by the terms of the instrument signed by defendant and Lindholm, would seem to be clear. But the court, having considered the contract invalid under the statute of frauds, made no finding on this amount, the testimony is not very clear thereon, and the defendant may under his answer have a defense of payment in whole or in part to this amount stipulated in the contract signed by him. We therefore consider that the judgment should be reversed and the cause remanded for a new trial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.