119 Utah 268 (1951)
226 P.2d 124
FLEMETIS et ux.
v.
McARTHUR et ux.
No. 7345.
Supreme Court of Utah.
Decided January 2, 1951.
*269 George E. Stewart, Roosevelt, for appellants.
Therald N. Jensen, Price, for respondents.
LATIMER, Justice.
Plaintiffs instituted this action to recover the sum of $2,000 alleged to be due them under the terms of an agreement for the sale of real property. The lower court entered judgment in favor of plaintiffs' and defendants' appeal. The parties will be referred to as they appeared in the court below.
On January 26, 1945, the plaintiffs and defendants entered into an agreement under the terms of which the plaintiffs agreed to sell and defendants to purchase approximately 200 acres of real property located in Duchesne County, Utah. The purchase price was $12,000, payable $8,000 at the time of the execution of the contract and the remaining balance was to be paid in five equal annual installments of $800 each. Title to 160 acres of the property was to be conveyed to the purchaser when $10,000 of *270 the purchase price had been paid. This 160-acre tract of land was paid for and deed executed, and so it is not involved in the present controversy. The agreement provided that since title to the remaining 40-acre tract was not in the name of the plaintiffs but in the name of Peter Flemetis, title should be properly and suitably vested in Tony Flemetis, and conveyed to the defendants by warranty deed. It was further provided in the agreement that until such time as a marketable title was obtained by the plaintiffs the defendants were not required to pay the final $2,000 on the total purchase price and that, unless title was perfected within five years and the abstract evidenced a record title free and clear of all encumbrances, the defendants were to be relieved from making the final payment.
The defendants paid the $10,000 in accordance with the terms of the agreement and plaintiffs instituted a suit to quiet title to the 40-acre tract. A judgment quieting title in Tony Flemetis was obtained, the abstract of title was brought up to date, and it, together with a waranty deed to the property, was deposited with the escrow holder. The plaintiffs then notified the defendants of their compliance with the terms of the agreement and demanded payment of the final $2,000. The defendants refused to pay the amount and this action was commenced.
In the court below defendants contended they were not required to pay the final installment because the abstract did not disclose a marketable title in the plaintiffs, and, since the property was not free and clear of all encumbrances, the conditions precedent to payment of the final installment had not been performed. In contending that the abstract failed to disclose a marketable title, defendants relied upon two defects: (1) That the patent from the United States reserved to the public certain rights in the land, and (2) that the abstract disclosed an encumbrance against the property in that Entry 10 showed an unreleased *271 mortgage from the Farmers' Irrigation Company to the United States of America and the Moon Lake Water Users' Association.
The plaintiffs replied that the claimed defects did not cloud the title; that, in all events, defendants' attorney, with the approval and consent of the defendants, was employed by the plaintiffs to quiet title to the property and that he instituted proceedings which resulted in vesting a marketable title in plaintiffs. Plaintiffs further replied that on or about August 8, 1946, the defendants sold the 160-acre tract to one J.T. Bergstrom; that they had assumed ownership of the 40-acre tract in controversy and had entered into an oil and gas lease on that tract for a period of 10 years from June 1945 to June 1955; that on January 6, 1947, defendants sold the 40-acre tract to the same individual who had purchased the 160 acres; that they had executed a warranty deed to the purchaser and delivered same to the bank at Roosevelt, Utah; that they had benefited by selling or leasing the property; and that because of said acts and conduct the defendants had waived strict compliance with the provisions of the agreement and were estopped to set up and assert that liens or encumbrances defeated plaintiffs' right to recover.
In their brief on this appeal, defendants not only rely on the two defects asserted in the court below, but in addition argue a third ground, namely, that certain tax deeds in the abstract show a variation in the spelling of the name of "Carolina" and "Caroline" Thompson. On oral arguments they expanded their contentions to include two additional encumbrances.
The patent from the United States provided that the property was conveyed "subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and *272 acknowledged by local customs, laws and decisions of courts; and there is reserved in the lands hereby granted a right thereon for ditches or canals constructed by authority of the United States."
The first clause of the reservation applies to those rights which had vested or accrued at the time of the issuance of the patent. The second clause was included in the patent in compliance with the provisions of an Act of Congress, dated August 30, 1890, contained in 26 Stat. 371, 391, Title 43 U.S.C.A. § 945. The patent in this instance with the reservations prescribed therein was issued on June 3, 1914, and was recorded in Duchesne County, Utah, on June 3, 1930, which was some fifteen years before the date of the agreement. The reservations, being based on a public statute and having been publicly recorded, were matters of public knowledge. The defendants entered into the agreement with notice of their existence. Purchasers of land must take notice of public statutes restricting the use of the granted premises and such restrictions constitute no breach of covenant or warranty. See Maupin on Marketable Title, 3rd Ed., Sec. 143.
The mortgage from the Farmers' Irrigation Company to the United States of America and the Moon Lake Water Users' Association does not cast a cloud upon plaintiffs' title. Entry No. 10 of the abstract discloses a mortgage from the Farmers' Irrigation Company whereby that company purported to mortgage the lands, water rights, reservoir rights, water appropriations, dams, flumes, conduits and ditches, etc., which were owned, used, occupied, and possessed by the mortgagor in Section 1, Township 1 South, Range 4 West, Uintah Special Meridian, Utah. The abstract does not show that the property mortgaged is the 40 acres in dispute or is in any way connected with or located thereon. Neither does the company appear as a record owner of any of the property involved. Moreover, *273 the evidence at the trial established that the mortgagor, in addition to not appearing in the chain of title, did not own, occupy, or use any of the described property. The company, from all that appears in the abstract or from the evidence developed at the hearing, is a total stranger to the land involved and could not have had any interest in it to mortgage. A mortgage executed by a total stranger to the record title, who has never been in possession of the property, does not create an encumbrance against the property. Such an instrument does not render the title unmarketable. See Devlin on Real Estate, Third Edition, paragraph 1480.
The three other claimed defects which defendants now press on us as valid liens or encumbrances against the property, are: (1) The variance in the names of "Caroline" and "Carolina" Thompson: (2) Hattie W. Thompson, wife of Morris Thompson, the patentee, may have had a statutory interest in the property which has not been accounted for; and (3) a mortgage executed in 1914 by Morris Thompson and his wife has not been released.
We are not disposed to consider these asserted defects. While it may be that they affect the marketability of the title, it might have been a relatively easy matter to have removed all doubts as to their validity had they been mentioned in the pleadings or called to the attention of the trial court. The mistake in spelling of the name is relatively unimportant, the mortgage is some 35 years past due, and the statutory interest of Mrs. Thompson may never have ripened into a vested right. Plaintiffs were required to furnish an abstract showing a good and marketable title, but this is a provision which may be waived by the defendants and we conclude that by failing to assert timely questionable defects in the trial court they have waived their rights to a reversal on those grounds.
Under our former procedure, the issues in a suit to quiet *274 title were not well defined, but they could be canalized by the pleadings and by the issues contended for in the court below. And it is to be hoped that under the new procedure, trial court will on pre-trial require litigants to state with definiteness the defects relied upon. This is a case which well illustrates how wandering and vagrant can be the issues if we permit defendants to assert new theories in this court. Moreover, for the most part, defects such as those now claimed, could be cured with little difficulty before or during trial, but they become insurmountable obstacles after the action has left the lower court. Undoubtedly, in most abstracts dealing with rural properties some entries necessary to establish a perfect title are missing. Usually documents can be obtained which will remove all elements of doubt. Had the defendants in this case specifically pointed out the defects they felt render the title unmarketable, the title could have been perfected without the expenses incidental to suit and appeal. This court will not found a reversal upon defects which were not put in issue in the court below, but which are suggested for the first time on appeal.
The Judgment is affirmed. Costs to respondents.
PRATT, C.J., and WADE and WOLFE, JJ., concur.
McDONOUGH, J., dissents.