Russell D. CALLISTER and L. Rex Andersen, co-partners, doing business under the firm name and style of the Callister Company, Plaintiffs and Appellants,

v.

MILLSTREAM ASSOCIATES, INC., a Utah corporation, Defendant and Respondent.

No. 860006–CA.

Court of Appeals of Utah.

Thomas N. Crowther, Cynthia J. Crass, Salt Lake City, for defendant and respondent.

Robert C. Cummings, Gordon A. Madsen, Salt Lake City, for plaintiffs and appellants.

Before ORME, GREENWOOD and BILLINGS, JJ.

## OPINION

ORME, Judge:

Plaintiffs appeal from a judgment against them in an action they commenced to recover damages for defendant's alleged breach of an agreement to buy real estate. After a two day trial to the court, the district court agreed with defendant's position that it was entitled to rescission of the agreement because (1) plaintiffs were unable to convey clear title at closing and (2)

plaintiffs misled defendant concerning the number of apartment units that could be built on the property. We affirm the judgment against plaintiffs, albeit on only one of the grounds relied on by the trial court.

The facts as found by the trial court can be succinctly stated. In July of 1981, defendant, using the standard form of "Earnest Money Receipt and Offer to Purchase" in use until quite recently, contracted to purchase real estate from plaintiffs. The property was not identified in the agreement, which referred only to "Attached Legal Description." That phrase was footnoted, and the text of the footnote stated: "Legal Description and preliminary title report to be provided by G[ua]rdian Title."[1] In the space provided for a description of the property, this phrase was added: "Property to be free and clear of all liens and encumbrances unless otherwise specified in this agreement." No lien or encumbrance was so specified except, by clear implication, the lien which secured a loan that defendant was going to assume as part of its purchase. The agreement contemplated closing of the transaction "on or before August 15, 1981."

The trial court found that prior to execution of the agreement defendant told plaintiffs it intended to build 100 units on the property and that plaintiffs told defendant that (1) the property was zoned R–2–8 and (2) at least 75 units could be built on the property.[2] The relevance of these particular findings is unclear since the agreement made no mention of these items, but did provide that "no verbal statement made by anyone relative to this transaction shall be considered to be a part of this transaction unless incorporated in writing herein."

Meanwhile, a recorded covenant, which plaintiffs failed to mention to defendant or to specify in the agreement, restricted the property to 60 units for so long as the property was zoned R–2–8. At the scheduled closing, which was postponed by a few days beyond the August 15 target date, defendant became aware of the restrictive covenant and refused to proceed. Within a few days, plaintiffs obtained release of the 60–unit restriction, for which a 75–unit restriction was substituted. Defendant still refused to perform. Plaintiffs declined to retain the earnest money deposit as liquidated damages and commenced this action.

Plaintiffs make three arguments on appeal. First, they contend the court erred in putting any credence in defendant's claim it was misled as to the number of units that could be built on the property. Second, they argue the title defect did not warrant rescission. Third, they point out defendant cannot receive attorney's fees pursuant to the terms of the very agreement it seeks to have nullified.

We agree there is no merit to defendant's claim it was misled. With or without actual or constructive notice[3] of the encumbrance, and whether acquired before or after execution of the agreement, defendant's substantive rights would be exactly the same since it had a contractual right to conveyance of title free and clear of all liens and encumbrances other than the one which was specified in the agreement.[4] Defendant concedes it was not entitled to an award of attorney's fees. *See* *BLT Inv. Co. v. Snow*, 586 P.2d 456, 458 (Utah 1978). The only issue requiring further attention, then, is the trial court's conclusion that rescission was warranted because of the title defect existing at closing.

In this regard, plaintiffs argue that time was not of the essence of the agreement

---

1. Apparently all the parties knew what property was the subject of the agreement. In any case, defendant did not argue that the agreement was unenforceable by reason of its failure to identify with sufficient particularity the property which was the subject of the agreement.

2. The zoning information and 75–unit figure were included on a brochure plaintiffs had furnished to defendant.

3. The restrictive covenant had been duly recorded in the office of the county recorder. Defendant is properly charged with constructive notice of the 60–unit restriction. *See* Utah Code Ann. § 57-3-2 (1986).

4. The protection offered by this provision no doubt explains why defendant did not more timely secure a preliminary title report nor otherwise concern itself with the status of the property other than to confer with the zoning office.

and that they, within mere days following the scheduled closing, succeeded in having the 60–unit restrictive covenant removed.

Even assuming plaintiffs were entitled to the additional time to clear the encumbrance,[5] it is fatal to their position that they did not actually clear it. They merely substituted a 75–unit encumbrance for a 60–unit encumbrance in the face of express, specially added contractual language that the property was to be free of all liens and encumbrances other than those referred to in the agreement. A 75–unit encumbrance failed to meet the requirements of the contract and provided grounds for rescission, just as the 60–unit encumbrance would have done.[6]

Plaintiffs argue, not without some persuasiveness, that defendant merely had a change of heart and wanted to get out of the deal, whereupon it latched on to "discovery" of the 60–unit encumbrance, which it had actually known about all along, as a convenient loophole. Of course, the use of short, general, fill-in-the-blank forms to govern expensive or complicated transactions is all but a guaranty that loopholes will be available for the wily. The loophole by which plaintiffs were defeated in this case could have been easily plugged by plaintiffs had they simply specified in the agreement that the 60–unit encumbrance, along with the lien securing the existing loan, was excepted from what was otherwise a broad requirement that all liens and encumbrances be cleared before title was conveyed.

The case is remanded to district court for the sole purpose of deleting from the judgment the award of attorney's fees in favor of defendant. The judgment is otherwise affirmed. Each party shall bear its own costs of appeal.

GREENWOOD and BILLINGS, JJ., concur.

---

5. Generally, a vendor is allowed a reasonable time to perfect title. *Walker v. Bintz,* 3 Utah 2d 162, 280 P.2d 767 (1955). *See Neves v. Wright,* 638 P.2d 1195, 1198 (Utah 1981) (seller need not have title at all times during the executory period of a contract, but in every case there must be a close scrutiny of facts to avoid unfairness). *But see Griffeth v. Zumbrennen,* 577 P.2d 129, 131 (Utah 1978) (provision in earnest money agreement specifically requiring performance on or before a given date connotes that time was of the essence).

6. Plaintiffs argue that if the purchaser has notice of encumbrances upon the property, and the encumbrance is of such a nature that it could not be removed by the vendor, like building restrictions, then the purchaser takes possession subject to the encumbrances. Plaintiffs cite 77 Am.Jur.2d, *Vendor and Purchaser* § 120 (1975) for this proposition and support it with *Leonard v. Woodruff,* 23 Utah 494, 65 P. 199 (1901) and *Flemetis v. McArthur,* 119 Utah 268, 226 P.2d 124 (1951). Neither case is applicable to the facts in the present case. In *Leonard,* the agreement between vendor and purchaser was silent as to the required character of the title. 65 P. at 203. In *Flemetis,* the reservations related to mineral and water rights, not building restrictions. 226 P.2d at 126. More appropriate analysis is found in cases such as *Bergstrom v. Moore,* 677 P.2d 1123, 1125 (Utah 1984) (if unexcepted encumbrances on vendor's title are irremediable and vendor will not be able to fulfill its contract to convey title as described in warranty deed, rescission is an appropriate remedy) and *Marlowe Inv. Corp. v. Radmall,* 26 Utah 2d 124, 485 P.2d 1402, 1404 (1971) (Ordinarily vendor does not have to have marketable title until the purchaser has made his payments. "Nevertheless if it plainly appears that he has so lost or encumbered his ownership or his title that he will not be able to fulfill his contract, he cannot insist that the purchaser continue to make payments when it is obvious that his own performance will not be forthcoming.").