.ESTATE OF ROSENTHAL: LAATSCH and others, Appellants, vs. FISHER and another, Respondents.*

*October 15—November 20, 1945.*

* Motion for rehearing denied, with $25 costs, on March 12, 1946.

*L. W. Bartelt* of Kewaskum and *Lloyd H. Lobel* of West Bend, for the appellants.

For the respondents there was a brief by *Lehner & Lehner* of Princeton, attorneys for Emma Fisher, and *F. H. Ackerman* of Jackson, attorney for E. L. Rosenheimer, and oral argument by *Philip Lehner, Jr.*

FRITZ, J. In August, 1944, August Rosenthal, a bachelor, died at the age of seventy-six. Laura Groth, a niece, lived with him on his farm and kept house for him for thirty-eight years. Likewise John Fisher, a nephew, worked for Rosenthal for over thirty years, and lived with him on Rosenthal's farm until, upon Fisher marrying Emma Fisher in 1939, he resided with her on her father's farm. Twenty-four hours after Rosenthal's death Fisher died; and his wife was his heir and was appointed administratrix of his estate. In a will executed by Rosenthal on May 20, 1944, with Phil Lehner, Sr., and Emma Fisher as the attesting witnesses, he provided that,—

"After the payment of my just debts and funeral expenses I give, devise and bequeath to John Fisher and Laura Groth, who have worked for me for many years, all of my property in equal shares, share and share alike."

Because Emma Fisher was an attesting witness to the will, the beneficial devise and bequest to her husband, John Fisher, was wholly void under sec. 238.08, Stats. However, she, as administratrix of Fisher's estate filed the claim in question herein, to recover on an alleged contract for services rendered for Rosenthal for thirty years by Fisher and for which it is claimed Rosenthal promised and agreed to compensate Fisher by giving him in payment thereof one half of Rosenthal's estate by his last will and testament. To support that claim and the trial court's allowance thereof on its findings, as stated above, the claimant relies principally upon oral testimony to the following effect, in addition to the above quoted provision in the will, to wit: Phil Lehner, Sr., who, as Rosenthal's attorney, drew the will after a conference with him and was an attesting witness, testified (over appellant's objection that the conversation between Rosenthal and his attorney was privileged) that,—

Rosenthal then "told him in the presence of Emma Fisher that he should draw the will so that one half of his estate would go to Laura and the other one half of his estate would go to John Fisher;"

that "they both had worked for him for over thirty years, and he had promised and agreed with them that he would leave one half of his estate to each of them as compensation for the services and he even made it a point to write that reference in the will; that they were getting paid for what they did for him;"

that "they both knew all about it; they knew that he was going to do this . . . that other near relatives hadn't done anything for him, and that he had done more for some of them than they had done for him. These two had always worked for me and they should have it;"

that "John Fisher came there when a young boy about fourteen years old and that Laura Groth had been there something like thirty-eight years; that he had always told them that they would get his property;"

that "he had not paid them any wages, but that from time to time they had gotten a little spending money;" and that "he had agreed to leave them his property as compensation."

In addition there was testimony by several others, who were relatives or neighbors of Rosenthal, that they had heard him state he was going to give one half of his property to John Fisher and one half to Laura Groth because they had worked for him; and one of those witnesses testified also that such statement was made in the presence of Fisher, and another testified that Rosenthal stated that no regular salary was received from him by Fisher.

Appellants' principal contention is that even if it be assumed that the testimony to the above effect was sufficient to prove that Rosenthal orally promised and agreed to compensate Fisher for the work performed by him for Rosenthal by giving him one half of Rosenthal's estate,—which consisted largely of his farm on which Rosenthal lived,—such oral agreement, in so far as claimant relies upon it as constituting a contract in relation to the transfer or devise of land, is void in view of the provision in the statute of frauds, sec. 240.08, Stats., that,—

"Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made or by his lawfully authorized agent."

Appellants' contention must be sustained. As is stated in *Estate of Leu*, 172 Wis. 530, 535, 179 N. W. 796,—

". . . where there is an oral promise to compensate by a devise of real estate in whole or in part, the agreement is utterly void and can be resorted to for no purpose except to rebut the presumption, where it exists, that the services were gratuitously rendered."

To the same effect see *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439; *Laughnan v. Estate of Laughnan,* 165 Wis. 348, 162 N. W. 169; *Nelson v. Christensen,* 169 Wis. 373, 172 N. W. 741; *Murphy v. Burns,* 216 Wis. 248, 257 N. W. 136; *Kessler v. Olen,* 228 Wis. 662, 280 N. W. 352, 281 N. W. 691. In *Kessler v. Olen, supra* (p. 664), the trial court found that,—

"The decedent orally agreed that if she [claimant, his daughter] would come home from Chicago and take care of him as long as he lived he would support her and her children and her household and make a will giving her all his property. . . . On February 6, 1935, the day the claimant began performance, the decedent 'did carry out the contract on his part and did cause to be executed a last will and testament in proper form' by which he 'did give all of his property' to the claimant. This will did not refer to the agreement or express the consideration for making the will."

In reversing a judgment in favor of the claimant we said (p. 666) :

"The appellant's principal assignment of error is that, as the decedent's property consisted partly of real estate, the oral agreement to give it to the claimant by will is void. It is void as to the real estate for want of a writing expressing the consideration signed by the party charged as required by sec. 240.08, Stats., and being void as to the real estate and being indivisible, it is void in its entirety and of no force except to rebut the presumption that the services to be performed by the daughter were gratuitous. A long line of cases support this contention. [Citations.]"

Neither is the provision in Rosenthal's will which reads,—

"I give, devise and bequeath to John Fisher and Laura Groth, *who have worked for me for many years,* all of my property in equal shares, share and share alike,"—

sufficient, as claimant contends, to constitute compliance with the provision in sec. 240.08, Stats., that every contract for

the "sale of any . . . interest in lands shall be void unless . . , some note or memorandum thereof, expressing the consideration, be in writing," etc. Neither by the words in that provision or elsewhere in the will is there any note or memorandum expressing the consideration. The merely descriptive or identifying words which are in that provision, "John Fisher and Laura Groth who have worked for me," obviously do not purport to express the consideration for a contract, and cannot be considered sufficient to constitute compliance with the statutory requirement in respect to "expressing the consideration." Under the circumstances, there are applicable herein the conclusions stated in *Harney v. Burhans,* 91 Wis. 348, 351, 64 N. W. 1031, in relation to a memorandum, which was held insufficient under sec. 240.08, Stats., to wit:

"Obviously, the written memorandum was insufficient in several material particulars. It is not necessary that the memorandum should contain all the parts of the contract, or be formal. No matter how bunglingly it may be drawn, it will satisfy the statute of frauds if it contains all the essential terms of the contract, either by its terms or by reference to other writings, so that it will not be necessary to resort to parol evidence to explain it. It must be definite in respect to the intention of the parties, who they are, their relation one to the other, who is the seller, who the buyer, the property, the price, and the terms of payment. This is too well established to need authorities in support of it; and, tested by the rule thus stated, the imperfections of the memorandum are quite apparent." See also Restatement, 1 Contracts, p. 278.

Neither can there be sustained claimant's contention that, even though there is no written contract or some note or memorandum thereof expressing the consideration which is sufficient to constitute compliance with sec. 240.08, Stats., there has been such part performance by Fisher of the oral agreement as to entitle him to specific performance under the provision in sec. 240.09, Stats., that,—

"Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements."

As appellants contend the part-performance doctrine under sec. 240.09, Stats., is not applicable in this case because there is no proof that there was ever open and notorious possession by Fisher of the farm in question, or that there were valuable improvements made thereon, or acts by Fisher in reliance on the gift or devise of the land to him by Rosenthal. As this court said in *Schmitz v. Schulenburg,* 236 Wis. 606, 612, 296 N. W. 103,—

"In *Bowen v. Warner* (1845), 1 Pin. 600, it was held that to take a verbal contract for the sale and conveyance of land out of the statute of frauds on the ground of part performance, the existence of the contract as laid in the bill must be made out by clear and satisfactory proof, and the act of part performance must be of the identical contract set up. Loose and unconnected conversations held at various times and with different persons of an uncertain and in some respects contradictory character, will not serve to establish the existence of the contract. This was followed by *Blanchard v. McDougal* (1858), 6 Wis. *167, 70 Am. Dec. 458. In that case it is said that the proofs must be clear, definite, unambiguous, and unequivocal. By *Marshall & Ilsley Bank v. Schuerbrock* (1928), 195 Wis. 203, 217 N. W. 416. By *Estate of Shinoe* (1933), 212 Wis. 481, 250 N. W. 505.

"(2) Ordinarily possession by the donee or the vendee is an indispensable element to part performance. The possession of the donee or the vendee must be referable exclusively to the contract relied upon. See cases already cited.

"(3) A parol gift of real estate or promise to convey will be specifically enforced only where there has been such part performance thereof by the donee or acts have been done by him in reliance on the promise which places him in a situation which will result in fraud or prejudice to him unless the promise is performed. See note, 101 A. L. R. p. 985, and cases cited."

To the same effect see *Ludwig v. Ludwig,* 170 Wis. 41, 172 N. W. 726; *Marshall & Ilsley Bank v. Schuerbrock,* 195 Wis. 203, 217 N. W. 416; *Estate of Powell,* 206 Wis. 513, 240 N. W. 122.

In the case at bar there is no proof that Fisher was at any time in open and notorious possession of Rosenthal's farm. From the time he first came there to work for Rosenthal until he married the claimant in, 1939, he and also Laura Groth resided thereon in Rosenthal's home and household. But that cannot be considered open and notorious possession. thereof by Fisher since his occupancy was obviously subordinate to possession of Rosenthal, who held the legal title and continued to operate the farm until his death in August, 1944. And moreover, Fisher did not even reside on the farm· from 1939 until the time. of his death, within twenty-four hours after Rosenthal died. Likewise, there is no proof that Fisher made any valuable improvements on the farm, or that there was any act or relinquishment of any valuable right by him in reliance upon the alleged oral agreement. In the absence of evidence to establish matters such as those, the trial court erred in concluding that the situation in this case is in principle the same as existed in *Estate of Powell, supra,* and that this case is pretty well controlled by the decision in that case. On the contrary, that in the *Powell Case* there were materially different facts to establish the open and notorious possession by the respondents George and Lottie Wilcox, and that there were valuable improvements made and other acts by them in reliance on the gift or devise of the land to them by Powell, is evident from the following matters stated in the opinion (p. 518),—

"The respondents moved back to the Powell farm at the solicitation of Powell and continued in possession thereof until Powell's death nearly twenty years thereafter. The Powell farm was ill-kept and run down; the buildings were delapidated, except the barn which was unfinished; it was not nearly

so attractive or remunerative as a renting proposition as the farm the Wilcoxes left. Powell lived at a small hamlet a half mile from the farm, but a room was always kept ready for his use in the house on the farm. . . . From the time they went on the Powell farm the Wilcoxes worked and managed it as they would a farm of their own. Wilcox cleaned it and kept it clean of quack grass and Canada thistles; cleaned out fence rows; built new fences; repaired the house and kept it in repair; helped finish a barn in process of construction; built a hog pen, hen house, and other outbuildings; tore down and removed dilapidated outbuildings; did work on a silo; made a driveway; wired outbuildings for electric lights; grubbed out an old and set out a new orchard and small fruit; . . . all beyond the work and conduct of a tenant and without being paid for the extra work or reimbursed his expenditures. Powell paid for most of the material that went into the improvements and did some work upon them, but the evidence tends to show the aggregate value of Wilcox's work and material not paid for or reimbursed amounted to upwards of $4,000. . . . The Wilcoxes testified that an agreement was entered into between Powell and them before they moved onto the farm; the agreement was not a lease; the Wilcoxes were to move on and fix up the place as their own; they went onto the place solely because of the agreement made; Lottie was to have the place; they expected Powell to will the farm to her. . . . It is urged that there was no such partial performance by the respondents as to warrant specific enforcement of the contract because the proof does not show that the respondents entered upon the land as and solely as a result of the contract. That the entry must so result is held in *Bowen v. Warner,* 1 Pin. 600, and many other later cases. But there is testimony of the respondents themselves to the precise point that they did so enter, and the circumstances indicate that they would not have gone upon the farm as mere tenants and that they did not so enter. It is urged that possession alone and that services alone do not constitute sufficient performance. . While it may be that no one act or no one class of acts of the respondents would alone have constituted sufficient partial performance to warrant specific enforcement, their acts in the aggregate throughout the twenty years that were beyond the requirements of ordinary tenancy

and husbandry were such that to deny them specific enforcement would operate as a fraud upon them, and the prevention of fraud is the basis of and the reason for the equitable relief .of specific performance."

It follows that the judgment under review herein must be reversed and the cause must be remanded with directions to deny the claim as filed, and for such further proceedings as may be proper if leave is granted to amend the claim so as to recover the reasonable value of services rendered by Fisher for Rosenthal, in so far as recovery therefor is not barred by the statute of limitations.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with the opinion.