KOVARIK and wife, Appellants, vs. VESELY and others, Respondents.

*March 5—April 8, 1958.*

574

For the appellants there was a brief by *Everett P. Doyle* and *Eugene A. Williamson,* both of Delavan, and oral argument by *Mr. Williamson.*

For the respondents there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Francis J. Korf.*

CURRIE, J.   On this appeal we accept the learned trial court's finding that the stipulation entered into by the buyers'

counsel, which set forth the mortgage terms, was intended to state the terms of the mortgage-loan application which had been filed by the buyers with the Fort Atkinson Savings & Loan Association. It is unfortunate that the discussion, which took place between counsel and the court leading up to the stating of such stipulation on the record, was not also made part of the record. Standing alone the stipulation is ambiguous, and in such a situation we deem that the trial judge has a right to resort to statements which were made in his presence by the counsel who stated the stipulation on the record, for the purpose of resolving the ambiguity.

Where no record is made of pertinent occurrences in an action, which took place in the presence of the trial judge, it is proper for such judge to set forth the same in the bill of exceptions. In the instant case, the trial judge did set forth the circumstances under which the disputed stipulation was entered into, in his memorandum opinion and in the statement he made on the record at the time of the hearing of the order to show cause. The record of that which transpired at the hearing of such order to show cause was incorporated into the bill of exceptions. We, therefore, approach the legal issues presented on this appeal on the basis that finding of fact No. 5 must be accepted as a verity.

The three issues confronting the court on this appeal are:

(1) Is the contract of purchase and sale, which was entered into between the plaintiff buyers and the defendant sellers, void because of failure to comply with the statute of frauds (sec. 240.08, Stats.)?

(2) How are the words of the contract, "this offer is contingent upon buyer's ability to arrange above-described financing," to be construed?

(3) Was the offer of the defendant sellers to accept a $7,000 mortgage upon the same terms as those set forth in the prior loan application to the Fort Atkinson Savings & Loan Association timely made?

It is the contention of counsel for the buyers that the contract fails to comply with the statute of frauds because the terms of the $7,000 mortgage are not set forth therein. On the other hand, it is the position of the attorneys for the sellers that such mortgage terms were set forth in the written loan application which the buyers signed and filed with the Fort Atkinson Savings & Loan Association, and that such application, although a separate writing, constitutes part of the "memorandum" of purchase and sale.

The general rule is that the memorandum required by the statute of frauds may consist of several writings. *Kelly v. Sullivan* (1947), 252 Wis. 52, 57, 30 N. W. (2d) 209; Restatement, 1 Contracts, p. 283, sec. 208; 2 Williston, Contracts (rev. ed.), p. 1669, sec. 580; and 2 Corbin, Contracts, p. 744, sec. 512. It is also not essential to the validity of such memorandum that a particular writing shall have been made with the intention that it constitute a memorandum of the contract. Restatement, 1 Contracts, p. 286, sec. 209.

The fact that the buyers' mortgage-loan application came into existence subsequent to the date on which the contract was signed by the parties is also immaterial. *Crabtree v. Elizabeth Arden Sales Corp.* (1953), 305 N. Y. 48, 110 N. E. (2d) 551; *American Nat. Bank v. Haggerton* (1922 Tex. Civ. App.), 250 S. W. 279; *Leonard v. Woodruff* (1901), 23 Utah, 494, 65 Pac. 199; and Anno. 85 A. L. R. 1184, 1193.

In *Kelly v. Sullivan, supra,* this court held that, when separate writings are necessary to spell out a memorandum of sale and they do not refer on their face to the same transaction, they cannot be construed together to constitute the memorandum required by the statute unless physically annexed to each other. In the *Kelly Case* the separate writing particularly relied upon was unsigned by the defendant seller, who was the party sought to be charged. The New York

court of appeals in the recent case of *Crabtree v. Elizabeth Arden Sales Corp. supra,* has held that the separate writings, even though one or more are unsigned, are sufficient to constitute the required memorandum, provided that when read together they appear to refer to the same transaction, or the connection between them and the transaction can be established by parol testimony. In so holding, the New York court in effect overruled a number of earlier New York decisions to the contrary. It is unnecessary for us to go that far in the instant case in order to hold that the loan application constitutes part of the memorandum of sale. We do not consider that *Kelly v. Sullivan, supra,* rules the instant case, because here the loan application is a separate writing subscribed by the Kovariks who are the parties against whom it is sought to enforce the contract.

We experience no difficulty in determining that the loan application to the Fort Atkinson Savings & Loan Association is a separate writing which is to be construed together with the original contract of the parties, and that together they constitute a sufficient memorandum to comply with sec. 240.08, Stats. *Kenner v. Edwards Realty & F. Co.* (1931), 204 Wis. 575, 581, 236 N. W. 597.

Counsel for the buyers also contend that the contract falls within the statute of frauds because the offer made in behalf of the sellers, to accept a $7,000 first mortgage having the same terms as stated in the loan application to the Fort Atkinson Savings & Loan Association, was made verbally and not in writing. The evidence of such offer is material on the issue of whether the event had occurred which removed the stated contingency from the plaintiffs' offer to purchase. Proof of the occurrence of such event is not required to be part of the statutory memorandum. For example, let us suppose that, instead of the Fort Atkinson Savings & Loan Association having rejected the buyers' loan application, its chief executive officer had verbally informed both the buyers and

the sellers that such application had been approved by the association and the loan granted, and the buyers had then refused to conclude the purchase of the premises. It is clear that in such a situation the buyers would not be permitted to assert that the contract was void under the statute of frauds because the association had verbally granted their loan application instead of doing so in writing.

We now turn to the issue of the proper construction of the contingency clause of the contract. It is not seriously argued but that as drafted the terms of the $7,000 mortgage financing were to be left to the discretion of the buyers. However, when they signed the application to the Fort Atkinson Savings & Loan Association, and such application set forth the terms of the loan applied for, they had exercised such discretion and were bound thereby. Therefore, the question boils down to whether the stated contingency of the contract was removed by the sellers offering to accept a $7,000 mortgage on the same terms. The exact contract wording is, "This offer is contingent upon buyer's ability to arrange *above-described financing.*" Such issue is to be resolved by determining whether the words *"above-described financing"* refer to the terms of the mortgage loan sought from the Fort Atkinson Savings & Loan Association, or do they also necessarily import that the loan itself must be procured from the named association.

This problem of interpretation is not unlike that facing a court when it endeavors to solve the problem of whether time is of the essence of a contract for the sale of real estate. In such a situation evidence of surrounding circumstance as to the acts of the parties may be material. *Long Investment Co. v. O'Donnell,* ante, p. 291, 88 N. W. (2d) 674. In the instant case, Kovarik testified that in negotiating the contract it was the seller Vesely who suggested the Fort Atkinson Savings & Loan Association as the source of financing the

$7,000 purchase-money mortgage. Kovarik was asked the following question and gave the following answer thereto:

"*Q.* It didn't make any difference to you from whom the loan was secured, did it? *A.* As long as it was from a reliable loan company or a bank. I had tried to borrow money from the local bank and they turned me down."

Kovarik's testimony stated no reason of any kind with respect to why the Kovariks preferred having the mortgage loan come from the association rather than from the Veselys. Neither was there any claim advanced in such testimony that at the time of making the contract it was of material consequence to the Kovariks that the loan be obtained from the association rather than some other source. The trial court could reasonably infer from the absence of any such testimony, and from the above-related evidence, that the words of the contingency clause of the contract, *"above-described financing"* were intended by the parties to have reference to the ability of the buyers to finance the balance of the purchase price by means of a mortgage loan of $7,000 on terms of their own choice, and that the source of such financing was not a material part of the condition.

The pertinent findings of fact by the trial court are Nos. 6 and 7, reading as follows:

"6. That the buyers did not intend by the words, 'above described financing,' to mean that such loan must be secured from the Fort Atkinson Savings & Loan Association.
"7. That the buyers were interested in financing a seven thousand dollar mortgage and not in any particular loaning agency."

Such findings are not against the great weight and clear preponderance of the evidence. Therefore, we approve the interpretation of the contract made by the trial court, that the buyers' offer to purchase was not contingent upon the

$7,000 mortgage being obtained from the Fort Atkinson Savings & Loan Association.

The last point to be considered is whether the sellers' offer of August 17, 1956, to take back the $7,000 purchase-money mortgage upon the same terms as contained in the prior loan application to the association was timely made. Counsel for the buyers contend that it was not because the buyers a week before had attempted to rescind the contract, and had then demanded back their down payment, as a result of learning of the rejection by the association of the buyers' loan application. This argument ignores the fact that the closing date specified in the contract was "on or before September 1, 1956." The sellers' offer to accept the mortgage was well in advance of September 1, 1956, and the buyers had no right to rescind the contract prior to the closing date because of inability to secure the $7,000 mortgage loan. Furthermore, the contingency clause was self-executing and not in the nature of one granting an option to cancel.

There are other issues raised in the briefs which have received careful consideration, but we deem it unnecessary to discuss them in this opinion.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). I interpret the contract as one which is conditional upon the willingness of a specified third party to make a loan to the buyers upon the security of the property being purchased. The third party having been unwilling to make the loan and there being no suggestion of lack of good faith on the part of the buyers in making the application and seeking the loan, the buyers have no further obligation under the contract and their down payment should be returned.

I do not view the contract as ambiguous and do consider the testimony of one of the buyers as to what he intended is immaterial. Many offers to purchase are made which

contain similar contingencies. Whatever may be the subjective intention of a buyer in any particular case, one can readily think of reasons why a buyer may make an offer contingent upon financing by a specific lending institution or through a particular type of loan. Examples of such reasons are: That the buyer will feel more confident of his own judgment of the price he is to pay if a lending institution is willing to make a loan; that the buyer would rather have the matter, in the event of default, in the hands of an established lending institution than in the hands of an individual who might be less able, if not less willing, to adjust matters reasonably.

The decision of the lower court, affirmed by the majority, treats the offer to purchase as if it offered $11,000 provided that the buyer could obtain a mortgage for $7,000, and gives no significance to the reference to the lender by name.

I am authorized to state that Mr. Justice WINGERT concurs in this dissent.