AIR POWER EQUIPMENT CORPORATION, Appellant, v. TELEMARK COMPANY, Respondent.

*April 11—May 9, 1967.*

For the appellant there was a brief by *Hughes & Hughes* of New Richmond, attorneys, and *Gwin & Fetzner* of Hudson of counsel, and oral argument by *Joseph Hughes* and *John W. Fetzner*.

For the respondent there was a brief by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Roy S. Wilcox*.

CURRIE, C. J.    The basis of plaintiff's appeal is that it is entitled to recover rental for the entire period of January 21 to March 13, 1964, and not merely for the time the compressors were actually used during such period.  This presents the issue of whether the trial court's finding that a separate verbal agreement had been entered into between the parties covering defendant's liability for rentals accruing after January 21, 1964, is against the great weight and clear preponderance of the evidence.[1]  To resolve this issue it is necessary to review the relevant evidence.

---

[1] No issue is raised that a verbal modification of the original contract of lease is void under the statute of frauds.  Such original contract was not within the statute of frauds and therefore could be modified by a subsequent oral agreement of the parties. *Gutknecht v. C. A. Lawton Co.* (1939), 231 Wis. 413, 417, 285 N. W.

Anthony Wise, defendant's president, testified: On or about January 21, 1964, "just prior to the close of the minimum contract period" he phoned Curtiss Anderson, plaintiff's president, who had approved the original contract on plaintiff's behalf. The purpose of the call was to discuss rental of the machines beyond the minimum rental period. Anderson agreed that defendant could retain the compressors, that payment would be based on "actual use," and that defendant "would not be charged for the time [it] did not use them." "He [Anderson] said that we might as well keep them up there rather than to have them in his motor pool, there might be some use for us and if down there there wouldn't be any use for them." Defendant did in fact use the compressors for two extended periods beyond the minimum contract period which use totaled fifteen days. At the end of each period of use, Wise phoned Anderson to inform him the compressors had been shut down.

Anderson's testimony had been taken before trial by deposition, which deposition was read into the record during trial. Anderson's testimony was as follows: He had authority to enter into binding contracts on behalf of plaintiff. No subsequent verbal or written agreements were entered into between the parties that changed the original written contract dated September 13, 1963. The latter part of January, 1964, he had a telephone conversation with Wise. Wise asked if he could continue to rent the compressors and Anderson answered "Yes." Wise again called Anderson at the very end of January or the first part of February and said he had used the compressors an additional seven days. Anderson then invoiced defendant for $\frac{7}{30}$ of a month's rent and payment was made of the invoice. Anderson did not remember whether Wise was subsequently invoiced for any other

411; 2 Restatement, Contracts, p. 768, sec. 407; 4 Williston, Contracts (3d ed.), p. 200, *et seq.*, sec. 591; 17 Am. Jur. (2d), Contracts, pp. 936, 937, sec. 466.

use, but defendant was invoiced for the original two months' rent.

Anderson was shown three invoices dated February 24, 1964, for $\frac{7}{30}$ of a month's rent from February 16 to February 24, 1964, each invoice covering different compressors whereupon he stated that the original had been sent to defendant. Anderson was in error when he testified that the invoices for the rental of the compressors from January 23 to January 31, 1964, were on the basis of $\frac{7}{30}$ of the monthly rental because the invoices disclose that defendant was billed $\frac{8}{30}$ of the monthly rental for that period. The subsequent set of invoices for the period of February 16 to February 23, 1964, were on the basis of $\frac{7}{30}$ of the monthly rental.

We deem it highly significant that, although defendant retained possession of the compressors, forty-nine to fifty-one days beyond the minimum rental period, it was only billed by plaintiff for the two separate periods totaling fifteen days. Manifestly plaintiff's conduct is consistent with Wise's testimony that the parties entered into an oral agreement, which agreement modified their original written agreement to the extent that rental of the compressors was thereafter to be based upon actual use.

If in fact plaintiff did not by its conduct, or otherwise, assent to an oral modification of the written rental agreement it is difficult to see, as the trial court observed, why defendant was billed only for days of use after January 21, 1964. Furthermore, the conduct of plaintiff in invoicing is in itself evidence of plaintiff's assent to the modification as testified to by Wise.[2]

On the basis of this record, the finding of the trial court that the parties entered into an oral agreement subsequent to their written agreement, which oral agree-

---

[2] *Mitchell v. Rende* (1947), 225 Minn. 145, 30 N. W. (2d) 27; *Dwyer v. Illinois Oil Co.* (1934), 190 Minn. 616, 252 N. W. 837; 4 Williston, Contracts (3d ed.), p. 210, sec. 592.

ment provided for rental based on use is not against the great weight and clear preponderance of the evidence.

Finally, plaintiff contends that the trial court should have excluded evidence of the alleged oral agreement between the parties subsequent to their written contract because of the "parol-evidence rule." This is not a point well taken. The parol-evidence rule operates only to render inoperative understandings and negotiations which *precede* or are *contemporaneous* with an integrated written contract, which evidence varies or contradicts the writing.[3]

"The parol-evidence rule, which precludes the introduction of evidence to vary the effect of a written instrument, has no application to agreements *subsequent* to the execution of the written contract." [4]

*By the Court.*—Judgment affirmed.

---

[3] See 3 Corbin, Contracts, p. 357, *et seq.,* secs. 573, 574; Grismore, Contracts (Murray ed. 1965), p. 146, *et seq.,* sec. 94.

[4] Simpson, Contracts (hornbook series, 2d ed.), p. 186, sec. 92.