BUNBURY and wife, Appellants, v. KRAUSS and another, Respondents.*

*No. 85. Argued January 2, 1969.—Decided February 7, 1969.*
(Also reported in 164 N. W. 2d 473.)

* Motion for rehearing denied, with costs, on April 1, 1969.

524

For the appellants there were briefs and oral argument by *Richard R. Rynders* of Madison.

For the respondents there was a brief by *Croak & Croak* of Madison, and oral argument by *Martin L. Croak.*

HEFFERNAN, J. Bunbury argues that the evidence fails to show an oral contract supplanting the payment terms of the land contract. He argues that the parol evidence rule excludes the evidence relied upon by the court to support its findings; and, in any event, since the statute of frauds requires a contract transferring an interest in real estate to be in writing, the oral modification, if in fact agreed upon, is in violation of the statute of frauds and void.

The trial herein was before the court, and when a trial judge finds there has been an oral modification or substitution of a written contract, this court in determining whether or not to sustain the findings will apply the rule that a finding by the trial court will be sustained unless it is contrary to the great weight and clear preponderance of the evidence. *Air Power Equipment Corp. v. Telemark Co.* (1967), 34 Wis. 2d 699, 702, 150 N. W. 2d 457. Applying that test we conclude that the findings of the trial court must be sustained. Florence Krauss testified unequivocally that she had not agreed to payments of $217.50, and she testified that she had told Bunbury that $175 was the maximum that could be paid. She testified that Bunbury agreed that this amount would be acceptable. Attorney Philip J. Croak also testified that Bunbury agreed that the lesser amount would be agreeable to him until the profits of the farm warranted the full $217.50 per month payment. From the testimony of Clyde Hutson, a representative of the Mortgage Company, the trial judge

could properly infer that the plain meaning of the loan agreement was that Krauss was to pay $175 per month and Bunbury was to make up the difference between that amount and the total amount owed, by payments every six months to the Mortgage Company.

Bunbury denied that any oral modification or substitution of the terms of payment of the land contract was ever entered into. He acknowledged, however, that, at the request of the Mortgage Company, he made up the difference between the Krauss payment and the $217.50 per month by payments every six months from July, 1963, until the time of the foreclosure.

Bunbury also testified that he had asked Florence Krauss and her attorney when they would be able to assume payments of $217.50.

It is undenied that this pattern of payments, $175 per month by Krauss and the balance made up by Bunbury, continued for almost four years, without any evidence that during that period Bunbury contended Krauss was not living up to the payment schedule. While the evidence is conflicting, under the test to be applied the evidence supports the trial judge's finding that the original agreement appearing in the written land contract was never assented to but was modified by an oral substitution and, as so modified, the defendants were not in default.

The plaintiffs would have us exclude testimony relevant to showing the substituted terms of the contract because some of these terms arose in discussions that either preceded or were contemporaneous with the signing of the land contract. He relies on the parol evidence rule. It is stated thus in 3 Corbin, *Contracts,* p. 357, sec. 573:

"When two parties have made a contract and have expressed it in a writing to which they have both *assented* as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of ante-

cedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (Emphasis supplied.)

Corbin, in the same paragraph of his text, points out that the parol evidence rule, as stated above, implies the existence of a written contract expressing the intent of the parties without any question of fraud or mistake, and to which the parties assent as a complete integration of their understanding.

3 Corbin, pp. 359, 360, sec. 573, *supra,* states that on the following issues evidence, oral or written, may be submitted:

"(1) Have the parties made a contract? (2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason? (3) Did the parties assent to a particular writing as the complete and accurate 'integration' of that contract?

"In determining these issues, or any one of them, there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be, however formal, and however many may be the seals and signatures and assertions. No one of these issues can be determined by mere inspection of the written document."

In the instant case the trial judge found as a fact that the parties did not assent to the land contract as the complete and accurate "integration" of the contract.

In his opinion he summarized the testimony of Florence Krauss pertinent to the question of whether the parties had ever assented to the terms of the written contract:

"In the instant case Miss Krauss testified flatly that at no time did she ever agree to make payments of Two Hundred Seventeen and 50/100 Dollars ($217.50) per month. Her testimony was clear on this point for she stated that under the circumstances she and her

brother could not possibly afford to pay more than One Hundred Seventy-five Dollars ($175.00) per month on the contract. She did indicate, however, that should there be a profit from the farm operations then the payments might be increased to the Two Hundred Seventeen and 50/100 ($217.50) figure. It is undisputed that the farm operations were consistently in the red for each year from 1963 through 1966.

"In addition, defendants' attorney testified that at the closing, or immediately thereafter, Mr. Bunbury agreed to accept One Hundred Seventy-five Dollars ($175.00) per month until such time as the farm earnings could make up the difference.

"It seems obvious to this court that the parties did *not* assent to the land contract executed on December 17, 1962 as the complete and accurate 'integration' of the contract."

Although the testimony is disputed, we cannot conclude that the trial court's finding that the land contract was not assented to is contrary to the great weight and clear preponderance of the evidence. 3 Corbin, page 366, *supra,* points out that when there is the assertion that a writing offered as a completely integrated contract was not assented to as an accurate or complete statement of agreed terms, the assertion may or may not be worthy of belief. Under the rules of this court, whether the evidence is credible is a question to be determined by the trier of the facts, in this case the circuit judge. In the event the trial judge gives credence to the testimony, as he did here, that the written contract was not assented to, and the testimony to that effect is not contrary to the great weight and clear preponderance of the evidence, the court's finding will be sustained, for, as 3 Corbin, page 366, *supra,* states, "This is mainly a question for the trial court."

As this court at an earlier date said of another trial judge:

"No comment we might make upon the conflicting evidence could add materially to the lucid and highly judicial analysis thereof contained in the opinion filed by

the circuit judge. We must, therefore, proceed upon the established existence of the facts so found as a basis for consideration of other questions." *Jost v. Wolf* (1906), 130 Wis. 37, 40, 110 N. W. 232.

It is thus apparent that under these circumstances the parol evidence is admissible not only to show that the writing was not assented to as an integrated contract (*i.e.,* that there was no agreement on the disputed terms) but also as evidence of a separate and partially oral contract that was arrived at as a consequence of the negotiations that followed execution of the land contract dated October 10, 1962.

As set forth above, the statements of Florence Krauss, the statement of the defendants' attorney that Bunbury agreed to accept payment of $175 per month until the farm operation became profitable, the loan agreement with the Mortgage Company which reiterated that Krauss was to pay $175 per month and Bunbury was to pay the balance, together with a course of conduct—*i.e.,* the pattern of payments of $175 per month for Krauss and the balance paid by Bunbury, is highly probative evidence of the formation of a modified contract for the sale of the land. The trial judge's conclusion that the evidence is sufficient to support that finding is clearly not against the great weight and clear preponderance of the evidence.

The plaintiffs assert that an oral modification of a land contract is within the statute of frauds [1] and, hence, is unenforceable. The argument of the plaintiffs is buttressed by the statement in 2 Corbin, pp. 102, 103, sec. 306, *supra:*

---

[1] Sec. 240.08, Stats.: "Contract for lease or sale to be in writing. Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made or by his lawfully authorized agent."

"An oral modification of a contract for the sale of land is within the statute if it provides for the substitution of other land; for payment by a conveyance of other land instead of money; for an increase or other change in the legal interest in land that is to be conveyed; for an additional quantity of goods sold; or for a change in the terms and conditions of conveyance or payment by the parties. Any oral modification that is itself a contract for the sale of land is within the statute wholly irrespective of whether the contract modified was within the statute or not and was in writing or not."

It is thus apparent that the oral contract is not valid unless there exist extraneous factors that have the effect of satisfying the statute of frauds or of making its provisions inapplicable. The statute itself provides that a memorandum in writing expressing the consideration, subscribed by the party to whom the sale is made, satisfies the statute. There may also be "part performance" that will take the contract out of the ban of the statute of frauds. *Wiegand v. Gissal* (1965), 28 Wis. 2d 488, 137 N. W. 2d 412, 138 N. W. 2d 740; *Kelly v. Sullivan* (1947), 252 Wis. 52, 30 N. W. 2d 209. Sec. 240.09, Stats., also recognizes the right of a court to enforce a contract that does not comply with the statute if there has been part performance of the contract, or one party may by his conduct be estopped to assert the statute of frauds. *Bratt v. Peterson* (1966), 31 Wis. 2d 447, 143 N. W. 2d 538.

We are satisfied that the statute of frauds has been satisfied by a memorandum in writing. In *Kovarik v. Vesely* (1958), 3 Wis. 2d 573, 580, 89 N. W. 2d 279, this court stated:

"The general rule is that the memorandum required by the statute of frauds may consist of several writings. *Kelly v. Sullivan* (1947), 252 Wis. 52, 57, 30 N. W. (2d) 209; Restatement, 1 Contracts, p. 283, sec. 208; 2 Williston, Contracts (rev. ed.), p. 1669, sec. 580; and 2 Corbin, Contracts, p. 744, sec. 512. It is also not essential to the validity of such memorandum that a particular

writing shall have been made with the intention that it constitute a memorandum of the contract. Restatement, 1 Contracts, p. 286, sec. 209."

In *Kovarik, supra,* the mortgage terms were not sufficiently defined in what purported to be the original contract. This court held that the mortgage terms set forth in the loan application, when construed together with the original contract of the parties, constituted a sufficient memorandum to comply with the statute. In the instant case there is no doubt that the previous writings, either the fully assented to land contract of October 10, 1962, which was admittedly modified, or the disputed land contract of December 17, 1962, contain all the terms of sale presently agreed upon except the terms of payment. These are supplied by the loan application filed with the Mortgage Company and signed by both parties. This document makes it perfectly clear that the obligation of the defendant, *in praesento* at least, was to pay only $175 per month. This is undisputedly a memorandum in writing. Does the fact that it was not executed at the same time as the oral agreement affect its validity? It is clear that the time of the preparation and signing of the memorandum is irrelevant. 2 Corbin, p. 711, sec. 503, *supra,* states:

"Any writing, signed by the party to be charged, and actually authenticating the existence and terms of a contract that he has made, is sufficient to satisfy the statute without regard to the time when it was made and signed."

The Restatement, 1 *Contracts,* p. 290, sec. 214, reiterates the same rule:

"A signed memorandum . . . satisfies the Statute, whether the memorandum is made before or at the time of the formation of the contract, or at any subsequent time during its existence."

The loan agreement, together with the executed land contracts containing undisputed terms of the sale of the land, constitutes a sufficient memorandum in writing to satisfy the statute of frauds.

Even without a memorandum in writing as we find here, there is undoubtedly part performance of the contract that the trial judge found had been orally agreed upon by the parties. The trial judge found that the agreement was to sell the land to Krauss for $35,000 with the obligation to pay only $175 a month for the present. Has there been such conduct on the part of the parties in performance of the oral contract that to hold it invalid as violating the statute of frauds would in itself work a fraud or hardship?

As stated above, sec. 240.09, Stats., makes the statute of frauds inapplicable if there has been a part performance of the contract. In order to make the doctrine applicable, the acts of part performance must be those which the oral agreement requires and must be for the purpose of carrying out such agreement. *Estate of Rosenthal* (1945), 247 Wis. 555, 562, 20 N. W. 2d 643; *Kelly v. Sullivan, supra,* page 59. In *Wiegand v. Gissal* (1965), 28 Wis. 2d 488, 495, 137 N. W. 2d 412, 138 N. W. 2d 740, we said that the performance relied upon to make the statute inoperative must be "exclusively referable to the contract." *E.g.,* if the possession of one claiming to be a purchaser were equally attributable to his former status as a tenant, the mere fact he was in possession would not be part performance exclusively referable to an agreement of sale that purported to give him the right to possession.

We have also said that an element of part performance is the prevention of fraud or injustice when the person by his performance in part has changed his position to his own detriment, to the extent that an injustice would be done by the invocation of the statute of frauds.

That there was part performance as contemplated by our case law is beyond question. The payment for four

years was in accord with the oral contract found by the court. The continued possession by the defendants was the result of the land contract and that possession was accepted and acknowledged by the plaintiffs Bunbury. Bunbury's action in paying without protest every six months the difference between the tentative contract terms of $217.50 and the $175 per month paid by Krauss is additional evidence that the performance was referable exclusively to the oral contract as it was understood and performed by both Krauss and Bunbury. Consistent with occupancy under the land contract, Krauss during his four years of possession paid the real estate taxes, made insurance payments, and completed some improvements to the property.

The performance over a long period of time was in reasonable reliance upon the terms of the contract. The position of the defendants has changed substantially as the result of their part performance, and it would be highly unjust under these circumstances to permit the strict foreclosure of the defendants' equity in the land contract.

The statement of the standards to be applied in determining whether there is part performance of an oral contract exemplifies the close approximation of this doctrine to the doctrine of estoppel.

In *Bratt v. Peterson* (1966), 31 Wis. 2d 447, 143 N. W. 2d 538, we discussed estoppel in relation to the statute of frauds. Speaking for the court, Mr. Justice WILKIE said, page 454:

"Estoppel consists of action or nonaction on the part of the one against whom the estoppel is asserted . . . , which induces reliance by another . . . either in the form of action or nonaction, to . . . [his] detriment."

2 Corbin (1964 Pocket part), pp. 84, 85, sec. 422A, *supra,* explains the close relationship between the doctrines of estoppel and part performance:

"There are a good many cases in which the court says that by reason of the plaintiff's 'part performance' the defendant is 'estopped' from setting up the statute of frauds. Although the doctrine of 'estoppel' had an origin quite different from that of 'part performance,' the term has no such narrow usage or definition as to prevent its use here. It is true that the term was used by the Chancellors primarily for the purpose of preventing one who had made representations of fact on which another had reasonably relied from later denying those representations unjustly and to the other party's material harm. The 'part performance' doctrine is used by the courts in order to compel a party to perform in accordance with an oral contract that is within the provisions of the statute of frauds. But legal terms do not start with a definition; and when some jurist constructs a definition the courts and the lawyers never strictly adhere to it. This is especially apparent in the case of 'estoppel.' It is now a very loosely used term in the process of doing justice, whether because of untrue representations or of broken promises. The case is exactly the same with the term 'part performance.' "

We agree with the Corbin analysis and conclude that either the term "part performance" or "estoppel" is appropriate in the present case to explain why the foreclosure of the land contract should not be permitted. It would be contrary to the interest of justice for a court of equity to permit a foreclosure under these circumstances.

The plaintiffs contend that the question of modification relied upon by the defendants was not within the scope of the answer, and in the absence of an allegation of an affirmative defense does not place the contentions of the defendants as argued on appeal properly before the court.

We conclude that the defendants' answer, in which they denied their default and alleged that plaintiffs had orally agreed "that the reduced payment of One Hundred Seventy-five Dollars ($175.00) monthly was acceptable until such time as the defendants' operation of the farm enterprise would permit" other payments, together with

the denial that the defendants have refused to make payments, raises all issues determinative of this appeal. The fact that the defendants only referred to the defense of "estoppel," which we find applicable, does not prevent them from asserting a modification, or new contract, when these terms are merely the label to be applied to the consequences of the oral agreement that was pleaded.

The plaintiffs were apprised by the answer of the entire factual scope of the defense to be raised by the purchasers. We conclude that all the issues were properly before the court.

*By the Court.*—Judgment affirmed.

PER CURIAM (*on motion for rehearing*). We have reexamined the statements of fact as stated in our opinion questioned by the appellants in their brief on rehearing. We reaffirm those statements. Appellants' rehearing brief is in violation of sec. 251.81, Stats., and is hereby stricken. Motion for rehearing denied with costs.