HARRIET T. DRAKE, AND OTHERS, APPELLANTS, *v.* RACHEL REGGEL, AND OTHERS, RESPONDENTS.[1]

1. PUBLIC LANDS.—TOWNSITE.—ADJUDICATION IN PROBATE COURT FINAL.—FAILURE TO RECORD CLAIM.—RIGHTS OF HEIRS AND REMAINDERMEN.—Pursuant to an act of congress approved March 2, 1867, known as the "Townsite Act," Daniel H. Wells, mayor, entered the townsite of Salt Lake City on the 21st day of November, 1871, and a patent of the United States issued therefor to him on the 1st day of June, 1872, "in trust for the inhabitants of said city according to their respective

---

[1] Appealed to the supreme court of the United States July 27, 1894.

interests." The territorial legislature passed an act February 17, 1869, prescribing rules and regulations for obtaining title under the townsite act. Section 2 thereof prescribes that the corporate authorities shall give public notice of such entry, and section 3 prescribes that within six months after the first publication of such notice, each and every person claiming to be the original owner of possession, occupant or occupants, or to be entitled to such occupancy or possession, shall file a statement in writing with the probate clerk of the county, containing a description of the land claimed and the specific right claimed therein; that the filing of such statement shall be considered notice to all persons claiming an interest in the lands; that all persons failing to make and deliver such statement within the time limited, shall be forever barred from the right of claiming or recovering such land or any estate or interest therein, or any part, parcel or share thereof in any court of law or equity. C. being in possession of a portion of the ground covered by the patent, on August 8, 1865, executed a deed to W. conveying a life estate to her with remainder in fee to such of her heirs as she might appoint. W. died without making any appointment. On March 26, 1872, W. filed the statement required with the clerk of the probate court, alleging " that she is entitled to a life estate in the said piece or parcel of land, remainder to her lawful heirs, and prays that a fee simple deed may issue to her." Upon an adjudication in the probate court, W. was adjudged to be the lawful owner of possession of the premises and to be entitled to a deed thereof in fee simple. In pursuance of this adjudication, the mayor of Salt Lake City afterwards executed to her a deed for the same in fee simple. W. afterwards conveyed in fee the land to various grantees, who purchased in good faith for adequate considerations and without any actual notice of the deed from C. The deed from C. to W., referred to in her statement filed in the probate court, was recorded in the book of mortgages. At the time of the adjudication in the probate court, some of the remaindermen, the heirs of W., were minors, and others were not born, and no statement was ever filed or adjudication made in their behalf. *Held, first,* that the person in actual possession of the land at the time of the adjudication in the probate court was entitled to a deed in fee simple, free from the claims of all persons failing to adverse under the provisions of the statute. *Second,*

that the rights of heirs and remaindermen not being adjudicated by the probate court within the time prescribed by the statute are lost, and that such heirs or remaindermen are barred by the terms of the statute and precluded from claiming or recovering the land in question under any right or title existing at the time such adjudication should have been made. *Third*, that as the statute contained no savings of the rights or express exception as to persons under disabilities, no such right or exception can be engrafted on it by construction. *Fourth*, that where a right vests in a class as such, the action or laches of the members of the class in being bind those yet unborn.

2. INNOCENT PURCHASERS.—CONSTRUCTIVE NOTICE.—A deed recorded in a mortgage record is not constructive notice to innocent purchasers for value, and a deed outside of the direct chain of title from the United States does not give constructive notice even if properly recorded.

3. PURCHASER UNDER MAYOR'S DEED.—PRESUMPTIONS IN FAVOR OF THE ACTS OF PUBLIC OFFICERS.—A purchaser under a mayor's deed, executed pursuant to townsite laws, is the same in principle as a purchaser from a patentee of the United States, and may presume the regularity of the preliminary steps which culminated in the patent or deed, and need not at his peril investigate those steps. In both cases title results from a judicial investigation conducted by public officers acting under the obligation of their oaths, and a purchaser may presume that the jurisdiction of such officers has been rightfully exercised.

(No. 486. Decided July 27, 1894. 39 P. R. 583.)

APPEAL from the District Court of the Third Judicial District, Hon. Charles S. Zane, *Judge*.

Action by Harriet Tuttle Drake and others against Rachel Reggel and others to recover certain lands in Salt Lake City. From a judgment for defendants, plaintiffs appeal. *Affirmed*. The opinion states the facts, except the following: That Daniel H. Wells, mayor, entered the townsite of Salt Lake City on the 21st day of November,

1871, and a patent issued therefor to him on the 1st day of June, 1872, "in trust for the inhabitants of said city according to their respective interests."

*Mr. J. W. Judd* and *Mr. J. G. Sutherland* and *Mr. W. H. Dickson*, for appellants.

Cronyn owned such an interest in the premises in dispute as was the subject of sale and conveyance. *Hussy* v. *Smith*, 99 U. S. 20; *Stringfellow* v. *Cain*, Id. 615. When Elizabeth D. Wilson took the deed from the mayor conveying to her the legal title of the premises, she took and held the property charged with all the trusts and limitations imposed by the deed of Cronyn to her of August 8, 1865. *West* v. *Child*, 31 Pac. Rep. 987; *Brush* v. *Ware*, 15 Peters, 34; *Felix* v. *Patrick*, 145 U. S. 327; *Everdson* v. *Mahew*, 65 Cal. 163; *Clark* v. *Titus*, 11 P. R. 312; *Ashby* v. *Hall*, 119 U. S. 526. The deed of Cronyn to his daughter being put upon record, became notice to all persons, who after that purchased the property or any part of it, and especially were subsequent purchasers chargeable with notice of statement contained in the declaratory statement in which the daughter claimed only a life estate. *Brush* v. *Ware, supra;* Devlin on Deeds, Vol. 2, § 1000; *Nelson* v. *Allen*, 1 Yerg. 360; *Martin* v. *Neblett*, 86 Tenn. 383; *Neslin* v. *Wells*, 104 U. S. 428. Cronyn having died leaving his daughter surviving, she became charged with the duty imposed by the deed of executing the trust therein contained in the manner therein directed, and not having done this a court of chancery considering that as done which ought to be done will decree accordingly. *Harding* v. *Glyn*, 2 Leading Cases in Eq. 334; *Davey* v. *Hooper*, 2 Vernon, 665; *Brown* v. *Higgs*, 8 Ves. Jr. 574; *Croft* v. *Adams*, 12 Simons, 540; *Grieveson* v. *Kissopp*, 2 Keene, 654; *Collins* v. *Car-*

*lyle's Heirs,* 7 B. Mon. 13; *Cruse* v. *McKee,* 2 Head. Tenn. 1; *Hoey* v. *Kennedy,* 25 Barb. 396; Storey's Eq. Jur., Vol. 2, § 1061; Perry on Trusts, §§ 249, 250, 251.

*Messrs. Williams, Van Cott & Sutherland, Messrs. Bennett, Marshal & Bradley, Messrs. Richards & Richards, Mr. S. P. Armstrong* and *Mr. C. B. Jack,* for respondents.

The case falls within the principles declared in the cases of *Missionary Society* v. *Dalles,* 107 U. S. 336 and *Buxton* v. *Traver,* 130 U. S. 232. Cronyn, neither at the time of making the deed relied upon, nor at the time of his death, had any inheritable interest in the premises— no rights whatever in the lands which he could convey and no rights which he could reserve. The purchasers from the daughter were only bound to follow the chain of title from the United States to her, and that chain was perfect. It showed that she was the absolute owner in fee of the property. The deed from her father to her was not in the chain, and being recorded in the mortgage record, was no notice to innocent purchaser. Respondents are not claiming under Cronyn but under the United States. Wade on Notice (2 ed.), 119 § 205; *Maul* v. *Rider,* 59 Pa. St. 171; *Blake* v. *Graham,* 6 Ohio St. 445; Sugden on Vendors, Ch. 17, note 430. The deed from George Cronyn to Lizzie D. Wilson was not necessary to the deduction of her title, which had its origin in the United States and came through the mayor to her. No examination was necessary outside of that chain and the record and entire instrument lying out of the line, could not charge notice. *Satterfield* v. *Malone,* 35 Fed. 445; *Lieby* v. *Wolf,* 10 Ohio, 83; *Woods* v. *Farmer,* 7 Watts, 385; *Calder* v. *Chapman,* 52 Pa. St. 362; *Bates* v. *Norcross,* 14 Pick. 231; *Murray* v. *Ballou,* 1 Johns. Ch. 573–4; Warvell on Vendors, pp. 268, 274. The record of

the deed from Cronyn to Wilson was not notice to purchasers for the reason that it was recorded in the mortgage record, and not in the record of deeds. Warvell on Vendors, 541, § 12; *Dey* v. *Dunham,* 2 Johns. Ch. Rep. 188; *Neslin* v. *Wells, Fargo & Co.,* 104 U. S. 428; *White* v. *Moore,* 1 Paige Ch. 553; *Brown* v. *Dean,* 3 Wend. 213; *Calder* v. *Chapman,* 52 Pa. St. 362. The townsite act merely shifts the matter of determining the title to town lots from the land office to the probate court, and the same rule of conclusiveness applies to its adjudications that is applicable to adjudications in the land office. *Smelting Co.* v. *Kemp,* 104 U. S. 639; *Ming* v. *Foote,* 23 P. R. 515; *American Mortg. Co.* v. *Hutchinson,* 24 Pac. 515; *Baker* v. *Brickell,* 87 Cal. 329; *Rogers* v. *Thompson,* 9 Utah, 46; S. C. 33 P. R. 234.

MERRITT, C. J.:

This is an appeal on the judgment roll from a judgment in favor of respondents. It appears from the record that on August 8, 1865, George Cronyn executed to his daughter, Lizzie D. Wilson, a deed of the premises in controversy. This deed, appellants claim, conveyed a life estate to Lizzie D. Wilson, with remainder in fee to such of her heirs as she might appoint. She died without making any appointment, and it is contended that appellants, her heirs, take in equal shares under the Cronyn deed,—the general intent of the grantor, that they should take, being capable of enforcement; the particular intent, that Lizzie D. Wilson might appoint among them, having failed.

At the time of the execution of the Cronyn deed the grantor had no other right or title to the land than a simple possession. The land was public land of the United States, and no statute then provided for its sale. The laws of the United States applicable to the disposal of

public lands were not extended to Utah territory until July 16, 1868 (15 Stat. 91). The townsite act, under which title was obtained, was enacted March 2, 1867, and the act of the territorial legislature prescribing the necessary regulations thereunder, was passed February 17, 1869.

This act contains numerous provisions regulating the rights of settlers, and the manner in which their rights should be ascertained. The second section enacts that, within 30 days after the entry of the townsite by the corporate authorities, they shall give a prescribed public notice thereof. Section 3 prescribes that, within six months after the first publication of such notice, "each and every person, * * * claiming to be the rightful owner of possession, occupant or occupants, or to be entitled to the occupancy or possession of such lands, * * * * shall file a statement in writing, with the probate clerk of the county, containing a description of the land claimed and the specific right claimed therein. That the filing of such statement shall be considered notice to all persons claiming any interest in the lands, of the claim of the person filing the same, and that all persons failing to make and deliver such statement within the time limited in this section, shall be forever barred from the right of claiming or recovering such land, or any estate or interest therein, or any part, parcel, or share thereof, in any court of law or equity." Section 4 prescribes procedure for a trial in a case of adverse claims; and section 5, for a hearing and determination as to claimants' right, where there are no adverse claimants, and for the execution of the mayor's deed to the person adjudged to be entitled thereto.

The mayor entered the townsite of Salt Lake City, including the premises in controversy; and on March 26, 1872, Lizzie D. Wilson filed with the clerk of the probate court of Salt Lake county her statement describing said premises, but alleging "that she is entitled to a life estate"

in the said piece or parcel of land, remainder to her lawful heirs, and prays that a fee-simple deed may issue to her, the said Lizzie D. Wilson," and further referring to the Cronyn deed, by the book and date of its record, as the source of her right. On the hearing her testimony was reduced to writing, under the statute, and she testified that she entered into possession and held as heir of her father, George Cronyn, who occupied the premises up to his death. The probate court adjudged Lizzie D. Wilson to be the lawful owner of possession of the said premises, and to be entitled to a deed thereof in fee simple; and the mayor of Salt Lake City, in pursuance of such adjudication, executed to her a deed of the same, in fee simple. She afterwards conveyed, in fee, the premises to the various respondents, or to their grantors. The respondents all purchased in good faith, for adequate considerations, and without any actual notice of the Cronyn deed, which was, however, recorded in the office of the county recorder of Salt Lake county prior to such purchases, and on the 23d day of October, 1871, in book, C, pp. 329, 330, of mortgage records.

Lizzie D. Wilson died intestate, and without making any appointment, and prior to the institution of this suit. Appellants are her heirs. It is not claimed that any of them filed with the clerk of the probate court the statement required by the act of February 17, 1869; and, unless they are in some way excepted from the bar of the statute, they would be precluded from claiming or recovering the land in question under any right or title existing at the time when such statement should have been filed. The right they now set up reaches back to the time of the execution of the Cronyn deed. If their construction of that deed be correct, they were entitled to an estate in such land, capable of being the basis of a statement and adjudication. It is true that, at the time this

statement should have been filed, some of the appellants were not born, and the remainder were minors. But the statute contains no express exception as to persons under disabilities, and no such exception can be ingrafted on it by construction. *Stringfellow* v. *Cain,* 99 U. S. 610. And where a right vests in a class, as such, the action or laches of the members of the class in being binds those yet unborn.

But it is contended that Lizzie D. Wilson, being, as claimed, entitled to a life estate, stood in a relation of trust towards those entitled in remainder, and that the trustee having, by a breach of duty, acquired the title, equity will hold her as trustee for the remaindermen, notwithstanding their failure to file the required statement. In other words, that although the statute attempts to bar any one so failing from thereafter claiming any "estate" in any "court of law or equity," there is one particular estate which such person can still claim in a court of equity. We find nothing in the statute to warrant this conclusion. In referring to a similar statute of the territory of Colorado, the supreme court of the United States said: "No language could be more explicit to make the failure to deliver the statement within the time specified a bar—an absolute bar—to the recovery of the same, however strong might be the equitable claim to the land so lost." *Cofield* v. *McClelland,* 16 Wall. 335; *Rogers* v. *Thompson,* 9 Utah, 46, 33 Pac. 234. It is not difficult to see a reason for such a bar. At the time of the passage of this act, Utah territory had been settled for a comparatively short time. The utmost informality characterized all transactions respecting land. The rights which were recognized were frequently evidenced by loose memoranda, and prior to 1870 no statute provided for the record of instruments pertaining to land, nor for the effect of a record, if made.[3] It was essential to the prosperity of the

community that the title to land should be rescued from such uncertainty, and the statute of February 17, 1869, was the remedy prescribed for this evil. It may shock the public conscience that a trustee should benefit by a failure to perform his duty; but that was the lesser of the two evils, and, in the judgment of the legislature, the public good required an end to uncertainty in titles. In any event, the legislature did not see fit to exempt trustees from the benefit of the statute, nor the owners of equitable estates from its bar; and the duty of the court is to declare the law, and not to make it. "*Jus dicere, et non jus dare.*" Appellants, having failed to file the required statement, are precluded from recovering any estate in the premises created by the Cronyn deed, and adverse to the fee-simple estate conveyed to Lizzie D. Wilson by the mayor of Salt Lake City.

We are also of the opinion that the respondents are innocent purchasers for a valuable consideration, and without notice of appellants' claim, and that notice thereof was not imputed to them by reason of the record of such deed in the mortgage record, nor by the recital thereof in the statement filed by Lizzie D. Wilson with the clerk of the probate court. That a deed recorded in a mortgage record, and conversely a mortgage recorded in a deed record, is not constructive notice, has been frequently decided, and rests on the reasonable presumption that an intending purchaser will not look in such a book for such an instrument. *Neslin* v. *Wells*, 104 U. S. 428; *Luch's Appeal*, 44 Pa. St. 519; *Colomer* v. *Morgan*, 13 La. Ann. 202. And it might be further said that the Cronyn deed, being outside of the direct chain of title from the United States, would not have given constructive notice, even if properly recorded. Nor could knowledge of Lizzie D. Wilson's declaratory statement be imputed to a purchaser.

It is ordinarily true that, if any deed in the chain of title depends for its validity on another instrument or instruments, a purchaser by *mesne* conveyance under such deed must take notice of an instrument or instruments which authorize it, and therefore of the recitals of such instruments. But this rule is subject to the manifest exception that, where a patent for land is issued by the regular officers of the United States, a purchaser from the patentee may presume the regularity of the preliminary steps which culminated in the patent, and need not, at his peril, investigate those steps. The title under the mayor's deed, in this case, does not differ in principle from title directly from the United States. In both cases, title results from a judicial investigation conducted by public officers acting under the obligations of their oaths, and a purchaser under such deed could presume that the jurisdiction of such officers has been rightfully exercised. It is unnecessary to decide what, if any, estate appellants took under the Cronyn deed. The judgment is affirmed.

MINER, BARTCH, and SMITH, JJ., concur.