AMOCO PRODUCTION COMPANY, a Delaware Corporation; Champlin Petroleum, Inc., a California Corporation; and Sun Oil Company (Delaware), a Delaware Corporation, Plaintiffs-Appellees,

v.

The UNITED STATES of America et al., Flying Diamond Oil Corporation, John R. Anderson, Beverly Lasrich et al., Defendants-Appellants.

No. 78–1147.

United States Court of Appeals, Tenth Circuit.

Argued July 19, 1979.

Decided April 21, 1980.

---

1. This is bad news if it is true.

John W. Horsley of Moyle & Draper, Salt Lake City, Utah, for defendants-appellants Flying Diamond Oil Corp., John R. Anderson and Beverly Lasrich.

MaryAnn Walsh, Washington, D. C. (Jacques B. Gelin, Atty., and Sanford Sagalkin, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., with her on brief), for defendant-appellant United States of America.

Alan L. Sullivan, Salt Lake City, Utah (Gerald R. Miller, Salt Lake City, Utah, with him on brief), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for plaintiffs-appellees.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

In 1942, the Federal Farm Mortgage Corporation (FFMC) conveyed by special warranty deed a fee simply interest in certain land in Summit County, Utah, to Hyrum and Florence Newton. The original deed and all copies other than a recorded version kept in the Summit County Recorder's Office are apparently no longer in existence. The parties dispute the exact contents of the original 1942 deed. Appellants claim that the deed reserved to the FFMC a one-half mineral interest in the property. As recorded, however, the deed contains no such reservation.

In 1957, the FFMC conveyed by quitclaim deed to the United States all of its mineral interest in various tracts of property, including the Newtons' property. The United States subsequently leased its claimed one-half mineral interest to the other appellants in this case.

In 1960, the Newtons conveyed their entire interest in the property to a family corporation, the Hyrum J. Newton & Sons Sheep Company (Newton Company). Beginning in 1971, this family corporation leased the entire mineral interest in the property to the appellees.

Appellees brought suit on January 21, 1976, under 28 U.S.C. § 2409a to quiet title to the disputed mineral rights. Contending that the Utah recording statutes provided

the appellees with constructive notice of the 1957 deed to the United States, appellants moved for summary judgment on the ground that the action was barred by the limitations period of § 2409a(f). That section bars a quiet title action against the United States twelve years after the claimant "knew or should have known of the claim of the United States." The district court denied the motion. It declined to apply Utah law, concluding that the phrase "knew or should have known" should be given a uniform federal interpretation rather than decided according to state law. The federal interpretation adopted by the court was that a "stray" deed [1] imparts no constructive notice to subsequent takers.

The appellees also moved for summary judgment. After excluding all of appellants' proffered evidence bearing on the contents of the 1942 deed, the court granted appellees' motion, quieting title in the appellees and requiring the appellants to account to the appellees for all profits realized under the claimed one-half mineral interest.

## I. Statute of Limitations

Section 2409a authorizes quiet title actions against the United States, but provides:

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(f).

This suit was commenced on January 21, 1976. Thus, if the Newtons or the Newton Company knew or should have known of the mineral claim of the United States prior to January 21, 1964, the suit must be dismissed. Appellants do not allege actual knowledge prior to this date. They insist, however, that the Newton Company "should have known" of the government's claim because under Utah law the recorded 1957 quitclaim deed to the United States provided constructive notice. Appellees contend that the district court properly rejected the application of state law in favor of a uniform federal law.

Because § 2409a limits the sovereign immunity of the United States, it must be interpreted according to federal law. *See United States v. Standard Oil Co.*, 332 U.S. 301, 309–10, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947); *Newport Air Park, Inc. v. United States*, 419 F.2d 342, 347 (1st Cir. 1969). *Cf. Wheeldin v. Wheeler*, 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963); *Garner v. Rathburn*, 346 F.2d 55, 56 (10th Cir. 1965). However, federal courts may properly look to state law as an aid in determining the application of statutory language to specific facts. *See, e. g., Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *United States v. Crain*, 589 F.2d 996, 998–99 (9th Cir. 1979). Local practices and local rules are particularly indicative of whether a party should have known a relevant fact. Moreover, questions involving ownership, transfer and title to real estate have traditionally been resolved according to the laws of the state where the realty is located. *See Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–79, 97 S.Ct. 582, 590–91, 50 L.Ed.2d 550 (1977); *United States v. Doyle*, 468 F.2d 633, 636 (10th Cir. 1972).

Applying these principles, we conclude that one of the conditions that will satisfy the "should have known" language of § 2409a(f) and trigger the limitations period is constructive notice under applicable state recording statutes. Accordingly,

1. A "stray" deed is a deed which is recorded outside of a purchaser's grantor-grantee chain of title. The FFMC deed to the United States was outside the appellees' grantor-grantee chain of title, but was recorded on the tract index.

as a matter of federal law, we believe that a party "should have known" of a claim of the United States at the time he was clearly and properly imputed with constructive notice of that claim under local recording statutes.

Courts of other states that maintain official tract indexes apparently disagree over the question whether a stray deed imparts constructive notice. *Compare McCoy v. Davis*, 38 N.D. 328, 164 N.W. 951, 954 (1917), and *Perkins v. Cissell*, 32 Okl. 827, 124 P. 7, 9 (1912), *with Fullerton Lumber Co. v. Tinker*, 22 S.D. 427, 118 N.W. 700 (1908), and *Balch v. Arnold*, 9 Wyo. 17, 59 P. 434, 439 (1899). The Utah Supreme Court has never squarely resolved the issue. However, early Utah cases tend to support the position that a stray deed recorded on a tract index does not give constructive notice. *See Boyer v. Pahvant Mercantile & Investment Co.*, 76 Utah 1, 287 P. 188, 191 (1930); *Drake v. Reggel*, 10 Utah 376, 37 P. 583, 584 (1894). *Cf. Flemetis v. McArthur*, 119 Utah 268, 226 P.2d 124, 126 (1951). Furthermore, at all times relevant to this suit—in 1957 when the quitclaim deed to the United States was recorded, in 1960 when the warranty deed was given to the Newton Company, and in 1964, 12 years prior to the initiation of this suit—the officially adopted position of the Utah State Bar was that a stray deed appearing on the tract index could be ignored. Record, vol. 1, at 99, 152. That position has since been amended.[2]

It is thus evident that Utah law on constructive notice from stray deeds is inconclusive and ambiguous, and was so at all times relevant to this case. A federal court applying state law may properly determine how the state courts will resolve ambiguities in state law. However, we need not do so in this case.[3] We need determine only that state law on the issue is ambiguous.

The operative words of the statute —"should have known"—import a test of reasonableness. Only if it was unreasonable for the Newton Company to have failed to discover the claim of the United States should the limitations provision of § 2409a(f) become operative. When, as here, the relevant state law is inconclusive and ambiguous on the effect of a stray deed, we are not convinced that, as a matter of federal law, a party should be considered so unreasonable in failing to have discovered the existence of a claim that he will be charged with constructive knowledge of that claim. The doctrine of constructive notice, which creates a fiction and deals with hypothetical facts, is a harsh doctrine which should be resorted to reluctantly and construed strictly. *See United States v. Suring State Bank*, 150 F.Supp. 60, 62 (E.D.Wis.1957); *Cody Finance Co. v. Leggett*, 116 F.Supp. 700, 706 (D.Wyo.1953), *aff'd sub nom. Reconstruction Finance Corp. v. Cody Finance Co.*, 214 F.2d 695 (10th Cir. 1954).

We emphasize that we are not deciding how Utah law would be applied in a similar situation. We hold only that under the circumstances of this case—where the

---

2. At least as early as 1955, the official bar standard advised that no consideration need be given by a title searcher to a deed recorded in the tract index by a stranger to the record title. Record, vol. 1, at 99, 152. Following publication of a 1954 law review article advocating a contrary position, Swenson, *The Utah Land Title Standards*, 1954 Utah L.Rev. 157, 158–62, the title standards committee of the state bar adopted a proposed supplement to the official standards which suggested that stray deeds could not be ignored by a title examiner. This proposed supplement was published in "The Utah Bar Bulletin" in 1956. Record, vol. 1, at 212. Finally, on June 18, 1964, the Utah State Bar officially adopted a new title standard which declared that a stray deed recorded on the tract index should serve as constructive notice to subsequent purchasers. Record, vol. 1, at 98–99, 157–58.

3. Presumably, a tract index should provide constructive notice of anything recorded on it, including a stray deed. The doctrine of constructive notice proceeds from a theory that a party who neglects a duty to search a title record should be imputed with notice of anything that would have been discovered upon a proper search. If a tract index is searched, a recorded stray deed would be discovered.

limitations period was triggered, if at all, only through constructive notice under state law, and the state law on constructive notice is ambiguous—we are unwilling to say for purposes of this federal statute that the Newton Company "should have known" of the claim of the United States.

## II. Exclusion of Evidence

Having determined that the action was not barred by the limitations period of § 2409a(f), the district court was faced with two alternative approaches to resolve the merits of the dispute. The court could have determined whether the Newton Company or any of its successors in interest was a bona fide purchaser sufficient to cut off any interest in the appellants.[4] The court selected, however, to decide first whether FFMC conveyed the disputed mineral interest to the Newtons in the 1942 deed, or whether it reserved the interest to itself.[5] If the original 1942 deed contained no mineral reservation clause, the appellants obviously have no mineral interest in the property.

Because appellees brought this quiet title action, they have the burden of establishing their title to the disputed interest. See *Littlefield v. Nelson*, 246 F.2d 956, 959 (10th Cir. 1957); *Perpetual Royalty Corp. v. Kipfer*, 253 F.Supp. 571, 573–74 (D.Kan.1965), aff'd, 361 F.2d 317 (10th Cir. 1966), cert. denied, 385 U.S. 1025, 87 S.Ct. 743, 17 L.Ed.2d 673 (1967); *Olsen v. Park Daughters Investment Co.*, 29 Utah 2d 421, 511 P.2d 145, 146 (1973). By introducing the recorded version of the deed, which showed that they received the entire interest in the property, appellees established a prima facie right to relief. See Utah Code Ann. § 78–25–3 (1953). The burden then shifted to the appellants to introduce evidence of the invalidity or inaccuracy of the recorded version of the deed. In granting summary judgment, the court excluded all of the evidence proffered by appellants.

### Routine Practice

The appellants offered evidence in an attempt to show that the routine practice of the FFMC was to reserve a one-half mineral interest in all property transferred during the relevant period. The court excluded this evidence on the ground that under Rule 1005 of the Federal Rules of Evidence,

---

4. Even though the United States is a party to this quiet title action, entitlement to the disputed mineral interest must be decided according to the principles of Utah property law. See *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–81, 97 S.Ct. 582, 590–92, 50 L.Ed.2d 550 (1977); *United States v. Doyle*, 468 F.2d 633, 636 (10th Cir. 1972). If the Newton Company or any of its successors in interest is a purchaser for value without notice, its interest would presumably be superior under Utah law to the claim of the United States. The United States clearly had constructive notice of the lack of a mineral reservation in the recorded 1942 deed.

In Part I we found that Utah law was not sufficiently clear and definite to satisfy by constructive notice the "should have known" element of § 2409a(f). However, this finding does not resolve the issue whether the Newton Company or any of its successors is a bona fide purchaser entitled to protection under Utah recording statutes. We cannot resolve this issue on appeal. We note only that constructive notice sufficient to destroy bona fide purchaser status under Utah law could result from infor-

mation appearing on the face of the recorded instrument, Utah Code Ann. § 57–3–2 (Supp. 1979), or by information which would have been discovered pursuant to a duty of reasonable inquiry. *Hayes v. Gibbs*, 110 Utah 54, 169 P.2d 781, 784 (1946). See *Wood v. Carpenter*, 101 U.S. 135, 141, 25 L.Ed. 807 (1879), quoted with approval in *Salt Lake, Garfield & W. Ry. v. Allied Materials Co.*, 4 Utah 2d 218, 291 P.2d 883, 885 (1955). Whether the circumstances were sufficient to create a duty of reasonable inquiry, the nature and extent of the inquiry required, and the facts that such an inquiry would have revealed, are all issues of fact. See *Schaefer v. Berinstein*, 140 Cal.App.2d 278, 295 P.2d 113, 125 (1956); *Pflueger v. Hopple*, 66 Idaho 152, 156 P.2d 316, 318 (1945). These issues should be resolved by the district court, as trier of fact. See 28 U.S.C. § 2409a(e).

5. The actual contents of the 1942 deed control as between the original parties and successors who are not bona fide purchasers. The recorded instrument is only prima facie evidence of the contents of the original.

the availability of a properly recorded version of the 1942 deed precluded admission of any other evidence of the contents of the deed. We believe the court misinterpreted the purpose and effect of Rule 1005.

Rule 1005 provides:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

The notes of the Advisory Committee on the proposed rules of evidence help explain the purpose of this rule:

> Public records call for somewhat different treatment. Removing them from their usual place of keeping would be attended by serious inconvenience to the public and to the custodian. As a consequence judicial decisions and statutes commonly hold that no explanation need be given for failure to produce the original of a public record. . . . This blanket dispensation from producing or accounting for the original would open the door to the introduction of every kind of secondary evidence of contents of public records were it not for the preference given certified or compared copies. Recognition of degrees of secondary evidence in this situation is an appropriate *quid pro quo* for not applying the requirement of producing the original.

Rule 1005 authorizes the admission of certified copies of records and documents filed and stored in public offices. The purpose of the rule is to eliminate the necessity of the custodian of public records producing the originals in court. This purpose is not furthered by extending the rule to encompass documents not filed and stored in public offices.

■ Rule 1005, by its terms, extends to "a document authorized to be recorded or filed and actually recorded or filed." This language encompasses deeds, mortgages and other documents filed in a county recorder's office. However, it is the actual record maintained by the public office which is the object of Rule 1005, not the original deed from which the record is made. If the original deed is returned to the parties after it is recorded, it is not a public record as contemplated by Rule 1005.

■ Applying Rule 1005 to exclude all other evidence of the contents of a deed is especially troublesome in a case such as this one. We cannot embrace an interpretation of the Rule which would exclude all evidence of the original deed other than the recorded version when the very question in controversy is whether the original deed was correctly transcribed onto the recorded version. Rule 1004(1), which authorizes the admission of other evidence of the contents of a writing if all originals are lost or destroyed, rather than Rule 1005, is applicable to the 1942 deed.[6] Accordingly, assuming it is otherwise admissible, evidence of a routine practice of the FFMC is relevant to prove conduct under Rule 406, and is admissible in lieu of the original under Rule 1004(1). Even if the evidence is not extremely probative, as indicated by the court, Record, vol. 2, at 431 n.2, it is sufficient to create a question of fact and render summary judgment improper. Accordingly, the case must be remanded for the district court to consider admissibility of the evi-

---

**6.** The court properly applied Rule 1005 in admitting a certified copy of the deed as recorded by the county recorder. Furthermore, because such a certified copy was available, the court should properly exclude any other proffered evidence of the contents of the recorded version of the deed. However, Rule 1005 does not preclude the admission of other evidence of the contents of the original 1942 deed. That deed is not a public record and Rule 1005 does not apply to it.

dence under a proper interpretation of Rules 1004 and 1005.

### BLM File Copy

The appellants offered into evidence a photocopy of what is purportedly a conformed copy of the 1942 deed. The copy was found in a case file of the Bureau of Land Management (BLM). In excluding the file copy, the court indicated that it was "apparently incapable of being properly authenticated," and, in any event, admission would be "unfair" under Rule 1003 of the Federal Rules of Evidence. Record, vol. 2, at 428–30.

 Documentary evidence introduced in federal courts must be authenticated under the provisions of Rules 901 or 902 of the Federal Rules of Evidence. Specifically, the proponent of such evidence must produce evidence "sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). The district court did not decide that the file copy could not be properly authenticated, but rather that it was "apparently incapable" of proper authentication. On remand, the appellants should be given the opportunity to properly authenticate the file copy under the provisions of Rule 901.[7]

 The court also excluded the file copy on the ground that it would be "unfair to admit the duplicate in lieu of the original" under Rule 1003.[8] The trial court felt that admission of the file copy would be unfair because the most critical part of the original conformed copy (the reservation clause) is not completely reproduced in the "duplicate." We find no abuse of discretion in this holding.

In determining that admission of the file copy would be "unfair," the court was apparently considering admission for purposes of proving the contents of the original conformed copy (and ultimately, the original 1942 deed). However, the appellants also urge admissibility of the file copy for other purposes. They argue that the file copy supports their claim that the original 1942 deed was prepared on standard form 657, that it bears the same identification number as the county recorder's copy and the Federal Land Bank ledger, and that it demonstrates the physical length of the land description, supporting the theory that a flapped attachment was used on the 1942 deed. Even if admission of the file copy is unfair for the purpose of proving the contents of the original conformed copy, it may not be unfair for other purposes. Assuming the appellants can satisfactorily authenticate the file copy, on remand the district court should consider admissibility for these purposes.

### BLM Plat and Index

The appellants urge that the district court improperly failed to consider an official BLM land office plat and a historical index which reflect the government's retained mineral interest. The court did not rule on this evidence, but said in a footnote:

> [D]efendants allege that certain official land office plats or indexes reflect a mineral reservation in the federal government. The court, however, has seen no evidence supporting this allegation or the inference defendants wish to be drawn therefrom.

Record, vol. 2, at 431 n.1.

In fact, the evidence was before the court. The index and plat were submitted

---

7. Appellants urge that the file copy can be authenticated as a public record under Rules 901(b)(7) or 902(4). However, the mere fact that a document is kept in a working file of a governmental agency does not automatically qualify it as a public record for purposes of authentication or hearsay. Although the recorded version of a deed is a public record, a copy of a deed deposited in a working file of the BLM is not, by that fact alone, a public record.

8. Although the BLM file copy is not a "duplicate" of the original 1942 deed, see Rule 1001(4), it is apparently a duplicate of the original conformed copy of the deed. As such, it is admissible to the same extent as the original conformed copy unless the trial court exercises its discretion under Rule 1003 to exclude it as "unfair."

by some of the appellants as exhibits to a July 6, 1976, motion for summary judgment. Record, vol. 1, at 34–36. Furthermore, they were specifically mentioned in the appellants' memorandum in opposition to the appellees' motion for summary judgment. Record, vol. 2, at 317–18. Accordingly, on remand the district court should consider this evidence.[9]

*Other Evidence*

The appellants also offered other evidence including a blank standard deed form 657, a copy of the 1957 quitclaim deed and certain working files of the BLM. On remand, the court should consider the admissibility of such evidence. The blank standard deed form would be relevant upon sufficient showing that the 1942 deed was prepared on a similar form. The 1957 quitclaim deed is not a "nullity" as suggested by the court. Record, vol. 2, at 431 n.1. Rather, it represents a valid transfer of all interest retained by the FFMC, if any, to the United States. However, the appellants must show that it is relevant to issues in this case and otherwise admissible. The working files of the BLM, although not necessarily admissible as public records, may be admissible to show the practice of

the agency and the manner in which deeds with lengthy descriptions were constructed.

### III. Conclusion

Because of the ambiguities in Utah law on constructive notice, this case is not barred by virtue of the "should have known" language of 28 U.S.C. § 2409a(f). However, the court's order granting summary judgment in favor of the appellees must be reversed. The court excluded much of the appellants' evidence on erroneous grounds. If otherwise admissible, the proffered evidence is sufficient to create questions of fact. On remand, the district court must reconsider the admissibility of the evidence in light of this opinion.

Reversed and remanded.

---

9. Unlike the file copy which is not a public record simply by virtue of its presence in a BLM working file, the BLM land office plat and historical index appear to be official records of a governmental agency and may qualify as "public records" under the federal rules.